CHESTER STINSON v. STATE OF INDIANA.

[No. 1073S199. Filed July 22, 1974.]

John G. Bunner, of Evansville, for appellant.

Theodore L. Sendak, Attorney General, David A. Miller, Deputy Attorney General, for appellee.

GIVAN, J.—The appellant was charged by affidavit together with Richard Oxford, London Davis and Charles Tyler with the crime of armed robbery. Subsequently, the charges against Oxford and Davis were dismissed by the State for lack of sufficient evidence. Tyler and the Appellant Stinson were granted separate trials. A jury trial of the appellant resulted in a finding of guilty of armed robbery, and that he be sentenced for a period of twenty years. The trial court entered judgment on the verdict, and appellant was sentenced accordingly.

The record in this case reveals the following facts:

On June 25, 1972, one William Butherus, a traveling diamond salesman, had checked into the Holiday Inn in Evansville, Indiana. He had made arrangements to meet one Roland Brinker, a local jewelry dealer, in his room at the motel. The purpose of the meeting was for Mr. Brinker to examine merchandise in the possession of Mr. Butherus. While Butherus was awaiting the arrival of Brinker, two negro men knocked on the door of Butherus' motel room. When he answered the knock, they produced guns and proceeded to rob Butherus of his merchandise.

While the robbery was in progress, Brinker arrived at the motel room and was admitted by one of the robbers, later identified as the Appellant Stinson. Both men were then placed in the bathroom of the motel room and told if either of them made any noise they would be killed.

The robbers took merchandise of a value in excess of $40,000 and left in Butherus' car.

The leaving of the car was witnessed by Jerry Hortsketter, a bellman employed at the motel.

Some two weeks after the robbery, Butherus and Brinker observed a police lineup, from which Butherus identified the Appellant Stinson as one of the robbers. However, Brinker testified that although he thought Stinson looked like one of the robbers, he could not be certain and stated during the trial that he could not be sure beyond a reasonable doubt that Stinson was one of the robbers.

Hortsketter did not view the lineup, but at the trial testified that the negro man he saw driving Butherus' car away from the motel was of the same general description as the appellant, however, he could not be certain it was the same man.

At the trial Butherus was firm in his testimony that the appellant was one of the robbers; that he got a good look at him in a face to face confrontation in a well lighted motel room; that he was certain of his identification at the lineup, and that he was equally certain of his in-court identification of the appellant based upon his observation of him in the motel room.

Appellant first claims the trial court erred in permitting State's witness Brinker to make an in-court identification of the appellant when he was unable to make such an identification at the time of the lineup. An examination of the testimony on direct examination and cross-examination of the Witness Brinker discloses that he never varied in his position as to the identification of the appellant. At the lineup he indicated to police authorities that he was not sure of the identification of the appellant. When he testified at appellant's trial, he stated that the appellant looked like one of the men who committed the robbery and that he believed he was one of the robbers, but that he was not sure. It has often been observed by this Court and courts in other jurisdictions that personal identification evidence is doubtful at best and should be subject to close scrutiny. It would be

naive to say that any person could be absolutely certain of the identification of another person whom they had never known previously and had observed only in a brief period of excitement and great tension. All testimony of such a nature must certainly be subject to extensive cross-examination in order that the jury may properly evaluate its content. The trial judge in this case ruled correctly in this regard. He observed that Brinker's lack of certainty was a matter for cross-examination. Trial counsel for the appellant was quite competent and thorough in his cross-examination of Brinker and very skillfully and thoroughly brought out the doubts in Brinker's mind concerning the identification of the appellant.

Appellant makes the same objection as to the Witness Hortsketter. Hortsketter was even more doubtful than Brinker as to the identification of the appellant. In fact, he stated at the trial that he did not get a good enough look at the driver of the automobile as it left the motel to identify him later. That all he could testify to was the driver of the car had on the same type of shirt as described by Butherus as being worn by the appellant, and that he was a thin negro. Again this witness was skillfully cross-examined and his lack of certainty clearly demonstrated to the jury. There is little doubt that had the jury only heard the testimony of Brinker and Hortsketter that the appellant would not have been convicted. Appellant correctly observes that this evidence identifying the appellant does not raise a Sixth Amendment right to counsel situation which was held to be involved in *United States* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert* v. *California* (1967), 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178. He claims that it does, however, involve the defendant's right to a fair trial under the due process clause of the Fourteenth Amendment and cites *Simmons* v. *United States* (1968), 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247. He also cites *Emerson* v. *State* (1972), 259 Ind. 399, 287 N.E.2d 867, 33 Ind. Dec. 115 and *Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d

440, 37 Ind. Dec. 405. In all of the above cases, the Courts, while observing that defendants are certainly entitled to a fair trial under the due process clause of the Fourteenth Amendment, and further observing the hazards of personal identifying evidence, nevertheless hold that when certain standards are followed, the due process clause has been satisfied.

In *Simmons*, the United States Supreme Court, after first observing that the FBI had resorted to photographic identification, stated that in spite of the hazards of such types of identification, under the circumstances where a serious felony had been committed and the perpetrators were still at large, it was essential for the FBI agents to act swiftly to determine whether or not they were on the right track and that under these circumstances the use of photographs was acceptable.

In both *Emerson* and *Sawyer* the Supreme Court of Indiana affirmed convictions, after first observing that the methods of identification although subject to close scrutiny, did, in the final analysis, withstand assault on the ground that they had deprived the appellants of due process.

In the case at bar, unlike the situations in *Wade* and *Gilbert*, we have witnesses whose testimony was of enough value to be submitted to the jury, but there was never any misleading of the jury that the witnesses were making positive identification, when they were not in fact qualified to do so. The witnesses in this case were quite candid in their doubts. Due process was afforded the appellant in every respect. We, therefore, hold the trial court did not err in permitting their testimonies especially in view of the proper and skillful cross-examination which was afforded the appellant.

The appellant next claims the trial court erred in denying his motion to produce a tape recording made by the police and the prosecutor of conversations of Tyler, which appellant claims contained evidence which he could have used in the impeachment of the State's witness Oxford. (Tyler and Ox-

ford were both named as defendants in the affidavit under which appellant was charged.) In support of his argument appellant cites *Brady* v. *Maryland* (1963), 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215, and *Giglio* v. *United States* (1972), 405 U.S. 150, 92 S. Ct. 763, 31 L.Ed.2d 104.

In both *Brady* and *Giglio*, the Court held that suppression by the prosecutor of evidence favorable to an accused violates due process, provided that evidence is material either to guilt or to punishment.

In the case at bar, the court held a hearing for the purpose of determining whether or not the tape recordings were of such a nature as to require their production at the request of the appellant. The record in this case discloses that these tapes were submitted for examination by the trial judge, who did in fact listen to the tapes. The State introduced testimony of two police officers, who were present at the time the tapes were made, who testified that there was nothing on the tapes that would exonerate the appellant. In addition, evidence was submitted that the tapes contained certain matters of a "delicate nature" concerning other crimes then under investigation, and that the disclosure of these extraneous facts to the appellant and his attorney could possibly be extremely detrimental to the investigations in progress in Vanderburgh County.

It was further established that Tyler would not be called as a witness for the State in appellant's trial, and it was conceded by the State that Tyler had made statements on the tapes to the effect that Oxford was on the scene at the time of the commission of the crime for which appellant was charged, and that Oxford had a machine gun in his possession at that time. It thus appears that the trial court had every reason to deny the appellant's motion to produce the tapes of Tyler's statement for a number of reasons: First, the State demonstrated ample reason to refrain from disclosing matters contained in the tapes; second, the State was quite open concerning the content of the tapes as they involved Oxford

and the appellant; third, before Oxford ever testified in the case against the appellant, appellant's counsel was well aware of the fact that Tyler had made accusations against Oxford which were contrary in fact to statements Oxford was to make and did make at the trial. Certainly, Oxford could not have been impeached by contradictory statements made by Tyler. Appellant was afforded every opportunity and, in fact, did in the cross-examination of Oxford question him in every detail as to exactly where he was at the time the crime was committed, the extent of his participation in the crime and the extent of the participation of the others charged. He was cross-examined at length concerning the number of weapons he owned and the nature of their operation.

There is nothing in this record to indicate that the appellant suffered any lack of due process in the denial of the production of the Tyler tapes. In addition, it was clearly demonstrated that any possible benefit which appellant might gain from examining the tapes was offset by the interest of the State in maintaining their secrecy for the time being.

We, therefore, hold the trial court did not err in overruling the appellant's motion to produce the Tyler tapes.

Appellant next claims the trial court erred in overruling his motion to withdraw the submission of the cause from the jury because of the prejudicial conduct of the prosecuting attorney during the cross-examination of appellant's witness Ronald Gross. That portion of the cross-examination to which the appellant objected reads as follows:

"XQ  And you are the same Ronald Lee Gross who was convicted of Armed Robbery and given ten years in the Indiana Department of Correction in 1972?

A  Yes, Sir.

XQ  That was for this crime?

A  Yes, Sir.

XQ  Part of that charge was that you conspired with Dick Oxford, wasn't it?

A  That's what he said.

XQ  And that's what a jury said, wasn't it?"

An examination of this record reveals that Ronald Gross was called as a witness by the appellant. In his opening questions to Ronald Gross, counsel for appellant asked him if he was presently under conviction and for what offense. Gross' answer was that it was for conspiracy in connection with the robbery with which the appellant is charged. He was specifically asked if he was acquainted with the defendant Chester Stinson. His reply was in the negative. He did state that he was acquainted with Richard Oxford. This was the extent of the original direct examination of Gross by the appellant.

It is obvious from this record that the appellant called Gross as a witness for the specific purpose of informing the jury that he had been convicted of conspiracy in connection with the crime for which appellant was charged, he did not know the appellant and was convicted largely upon the testimony of Oxford.

The appellant relies heavily upon the case of *Lincoln* v. *State* (1921), 191 Ind. 426, 133 N.E. 351. In the *Lincoln* case, this Court correctly stated that it was improper for a prosecuting attorney to constantly remind the jury that a co-defendant had already been convicted in a separate trial. This type of action on the part of a prosecuting attorney is, of course, improper. However, this is not the situation in the case at bar. In the first place, there is no showing in this record of any method of presentation by the prosecutor calculated to constantly remind the jury of the conviction of others charged with crimes connected to the robbery. Questions and remarks by the prosecutor to which the appellant now objects were proper cross-examination and comment concerning questions first raised by the appellant. The trial court did not err in permitting the prosecuting attorney to develop this line of questioning in order to test the credibility of the Witness Gross.

The appellant next claims the trial court erred in overruling appellant's objection to a question asked of State's

witness Deputy Prosecutor Douglas Knight. Knight was asked if he had taken steps to keep the whereabouts of State's witness Oxford a secret. The appellant objected on the grounds it was improper for a Deputy Prosecuting Attorney to give the reasons for any actions which they may have taken or failed to take with regard to a witness. This line of questioning was brought out in rebuttal evidence by the State by reason of the cross-examination of Oxford by the appellant in an attempt to show that he had been a fugitive from pending charges arising out of this same case.

In its rebuttal, the State attempted to show the jury that Oxford had not been a fugitive, but that he had been cooperative with the State, had always appeared when requested to do so, but that the State had allowed the co-defendants to believe Oxford was a fugitive because he had been threatened in an attempt to discourage his testifying for the State, and the State was attempting to keep his whereabout unknown to the other defendants.

Under the above circumstances, it was entirely proper for the trial judge to permit the State to rebut the attempts of the appellant to impinge the credibility of Oxford by attempting to show that he had received favored treatment and was a fugitive. 23 C.J.S., Criminal Law, § 1050; 8A I.L.E., Criminal Law, § 453; *DeShone* v. *State* (1934), 207 Ind. 380, 193 N.E. 223.

Appellant next claims he was denied a fair trial by irregularities in the deliberation of the jury in that: 1. The jury returned its verdict of twenty years believing that upon such a verdict the defendant would be required to serve only four or five years in prison, and 2. The jury reached its verdict in the assessment of the penalty against the defendant by a majority rule.

In support of both of these claims the appellant has submitted affidavits by jurors. Appellant acknowledges the rule of law in this state that a juror's verdict may not be impeached by the testimony or affidavit of a juror, citing

*Wilson* v. *State* (1970), 253 Ind. 585, 255 N.E.2d 817, 21 Ind. Dec. 1. See also *Laine* v. *State* (1972), 154 Ind. App. 81, 289 N.E.2d 141, 33 Ind. Dec. 502. The appellant, however, requests this Court to re-examine the rule of law set out in *Wilson,* at least in the area in which the jury assesses the amount of punishment.

We are unable to agree with appellant in his argument in this regard. The *Wilson* case, is well reasoned. If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries. The trial court did not err in refusing to set aside the verdict by reason of the affidavits of the jurors.

The appellant next claims the trial court erred in overruling appellant's motion for withdrawal of the submission of the cause for misconduct on the part of the prosecuting attorney in that the prosecuting attorney asked the Witness Oxford if the co-defendant Charles Tyler had ever threatened Oxford's life if he testified against the appellant.

This is the same general question which was raised concerning the testimony of Deputy Prosecutor Knight. In this cause the question to the Witness Oxford was asked on re-direct examination after the appellant on cross-examination had questioned Oxford concerning whether he was a fugitive and whether he had received favored treatment by the State concerning the charges, the amount of bail and his incarceration. Under the circumstances, it was entirely proper for the State to continue this line of questioning with the Witness

Oxford and to demonstrate the reasons for the State's concern for the welfare of Oxford. 23 C.J.S., Criminal Law, § 1050; 8A I.L.E., Criminal Law, § 453; *DeShone* v. *State* (1934), 207 Ind. 380, 193 N.E. 223.

In support of his position, appellant has cited 8 I.L.E., Criminal Law, § 193 and *Perfect* v. *State* (1923), 197 Ind. 401, 141 N.E. 52, for the proposition that evidence that a third person procured or attempted to procure the absence of a witness is inadmissible against the accused unless it be proved that he was privy to such act.

In the case at bar the State could not have shown in its case in chief that one of the accomplices had threatened a witness unless it could first show that appellant was privy to such a threat. However, such is not the situation here. The State did not attempt to place this matter in evidence in its case in chief. The evidence was submitted on rebuttal for the sole and proper purpose of explaining matters opened by the appellant on his cross-examination of the witness. Therefore, the trial court did not err in permitting such cross-examination by the prosecution.

There is no showing of reversible error in this record. The trial court is, therefore, affirmed.

Arterburn, C.J., and Hunter, J., concur; DeBruler and Prentice, JJ., concur in result.

NOTE.—Reported at 313 N.E.2d 699.