Ruel E. BRYANT, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 578 S 85.

Supreme Court of Indiana.

Feb. 2, 1979.

Rehearing Denied April 3, 1979.

Patrick Brennan, Patrick Brennan & Associates Professional Corp., South Bend, Douglas D. Seely, Jr., Mishawaka, for appellant.

Theodore L. Semdak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

At the outset, we observe that the defendant's preparation of the record does not conform to the requirements of our appellate rules. Counsel is referred to the State's answer brief for a more detailed and wholly justified critique. We would be warranted in dismissing or affirming, as urged by the State, for what does not qualify as a "good faith attempt at compliance." Only our concern for the defendant's appellate rights has motivated us to review this case, at the expense of substantial judicial time which more careful preparation by counsel would and should have averted.

■ As an additional caveat, not to counsel herein alone, but to all who practice before us, the best briefing practice is to prepare it in sufficient detail as to "tell the story." References to the record, in support of the story, are often helpful and are to be encouraged. But references to the record that are made merely to minimize the labor and shorten the brief should be avoided. Counsel is reminded that although multiple copies of the briefs are filed, there is but one copy of the record. Therefore, when we are fully informed from the briefs, without being required to "wait our turn" to view the record, our deliberations and decisions are considerably expedited. Ideally, absent a dispute as to what the record does, in fact reveal, it is unnecessary for us to view the record at all.

\* \* \* \* \* \*

Defendant (Appellant) was charged with felony-murder (Murder in the First Degree), Ind.Code § 35–13–4–1 (Burns 1975), and Commission of a Felony (Robbery) While Armed, Ind.Code § 35–12–1–1 (Burns 1975). Upon return of a jury verdict of guilty on both counts, the trial judge sentenced Defendant to imprisonment for life on the murder charge, but held that the armed-felony charge was a lesser-included offense of the murder charge. Upon this direct appeal, Defendant presents the following issues for review.

(1) Whether the trial court erred in admitting into evidence certain testimony concerning an extradition hearing.

(2) Whether the trial court erred in excluding from evidence a transcript of Defendant's testimony at his extradition hearing and whether, in so ruling, the court made prejudicial comments on Defendant's failure to testify.

(3) Whether the trial court prejudicially restrained the cross-examination of State witnesses on their alleged use of mug-shots to bolster their in-court identifications.

(4) Whether the trial court erred in sustaining the State's objection to a reference in Defendant's final argument in regards to Arthur Patterson.

(5) Whether the trial court erred in denying the Defendant's Motion to Correct Errors based on an allegation of newly discovered evidence.

(6) Whether Defendant was prevented from having a fair trial by alleged misconduct of the jurors, to-wit: discussing evidence in the jury room prior to the case being submitted to them, discussing newspaper and television reports of the case, and making expressions of bias and prejudice against Defendant.

\* \* \* \* \* \*

## ISSUE I

■ Four armed men robbed the Peppermint Lounge, an "after-hours" roadhouse, and in the course of that robbery, one of the owners of the roadhouse was shot and killed. Matthew Williams was accused of being the "trigger-man" and Defendant was accused of being one of his accomplices. At trial, the State called upon Charles Wright, co-partner and son of the deceased victim, to testify that the person who shot his father was Matthew Williams; that he had identified Williams by means of a photographic display and, later, upon seeing him in person in Chicago. During the State's interrogation of the witness, Wright, the following colloquy ensued:

"WITNESS: I saw him in person for the first time in Chicago, Illinois.

"PROSECUTOR: And who was there when you saw him?

"WITNESS: The State—

"DEFENSE COUNSEL: I object, Your Honor, I don't think that has anything to do with this event. It is superfluous.

"PROSECUTOR: It is part of the charge.

"COURT: Overruled. He may answer.

"WITNESS: In Chicago, Illinois there were myself and other witnesses, St. Joe County Sheriff Department, two detectives from the St. Joseph County Sheriff Department, one detective from the Indiana State Police and the Prosecuting Attorney's Office."

Defendant asserts that this testimony created a prejudicial inference that he, the defendant, fought extradition and was, therefore, guilty. We are unable to comprehend this argument. First, there was no reference to extradition in the testimony, and secondly, the witness' testimony was not even in reference to the defendant, but rather ₄was that he had seen Williams, the alleged "trigger-man", in Chicago.

## ISSUE II

■ Defendant sought to introduce into evidence Exhibit "F" which was a transcript of his own testimony which he had previously given at his own extradition hearing. The testimony included his statement that he had never been in Indiana and bolstered his "alibi" defense. The State objected to admission of the transcript and was allowed to cross-examine the witness who had identified it. Defendant's request that such examination and ensuing legal arguments be conducted outside the presence of the jury was denied. During the discourse that followed at the bench, the following statements were made in the presence of the jury:

"PROSECUTOR: Three basic objections. One, we feel it is an attempt by the defense to introduce testimony by the defendant without giving the State an opportunity to cross-examine the defendant on that testimony, two is that the testimony which is offered here is testimony from the extradition hearing which is far different in nature and character than a trial on its own merits, three, we don't feel the documents have been sufficiently certified to make them Court records. There is absolutely no exception to the hearsay rule in this that I know of at all.

\* \* \* \* \* \*

"THE COURT: The Court will sustain the objections to the exhibit on the grounds that it does constitute hearsay because it is an attempt to introduce an out of court statement for the truth of the proposition and in Indiana that constitutes hearsay unless the person is available to testify on cross examination, the defendant having special Fifth Amendment rights. So on those grounds the objection is sustained."

On appeal, Defendant contends that he was thereby prejudiced in several ways.

First, he states that the Prosecutor's use of the word "extradition," though correctly denominating the type of hearing, raised an inference of guilt. We disagree. The mere identification of the hearing as an extradition hearing did not, in itself, create an inference that Defendant fought extradition; nor did it lead to the further inference that Defendant was guilty. *Hale v. State*, (1955) 198 Tenn. 461, 281 S.W.2d 51. *See generally,* 22A C.J.S. Criminal Law § 628, p. 477 (1961).

Additionally, the defendant contends that his failure to testify was "highlighted" by:
(1) the Prosecutor's argument that the defendant was attempting to introduce his statement without being subject to cross-examination, and by
(2) the trial court's statement that Exhibit F was inadmissible hearsay because the defendant was not "available to testify on cross-examination, the defendant having special Fifth Amendment rights."

■ Any direct or indirect comment which is subject to interpretation by a jury as a comment upon the failure of the defendant to testify is impermissible. *Griffin v. California*, (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *Rowley v. State*, (1972) 259 Ind. 209, 285 N.E.2d 646; *Long v. State*, (1877) 56 Ind. 182; Ind.Code § 35–1–31–3 (Burns 1975).

■ However, we are here concerned with several innocuous statements regarding the defendant's unavailability for cross-examination while discussing a technical hearsay question. These were not direct comments on Defendant's failure to testify and any indirect implications that might conceivably be drawn therefrom are too tenuous to require a reversal. That these statements were directed to the judge and, by the judge, to counsel rather than to the jury, reduces the likelihood that they would have had any improper impact. It generally is better practice to hold such discussions outside the presence of the jury, but such is not always practicable. In any event, if Defendant believed himself to be thereby prejudiced, his remedy was to ask for a mistrial, or possibly for an admonition, which does not appear to have been done, and no question has been preserved. A party may not, by action or inaction, await the verdict and then seek to set it aside for error that could have been averted or corrected. For all that the record discloses, we do not even know that the jury heard the remarks of which he complains.

As for the admissibility of Exhibit F, Defendant admits that this evidence is hearsay but argues that it falls within one of the exceptions to the Hearsay Rule, to-wit: former testimony.

■ The theory of the hearsay rule is that the reliability of declarations can best be tested by cross-examination of the declarant. The various exceptions to the rule, including the exception for prior testimony, are premised upon necessity and probable reliability of the declaration. It is Defendant's position that his prior self-serving testimony was admissible because it had been given under oath and subject to cross-examination at the time given and because he elected not to testify and was thus "constitutionally unavailable."

■ With reference to Defendant's claim that the offered statement had been subject to cross-examination, that alone is not sufficient. To be admissible, it must appear that the party against whom the evidence is offered had, in the former proceeding, not only an opportunity but also a similar motive to cross-examine the witness. McCormick, *Evidence* § 257, § 258; 31A C.J.S. *Evidence* § 389 (1964). *Accord*: Fed.R. Evid. 804(b)(1); Weinstein, J. and Berger, M., *Weinstein's Evidence*, § 804(b)(1)[04] (1978). *See generally,* 5 Wigmore, *Evidence* § 1386 (Chadbourne rev.1974).

■ Though Defendant was subject to cross-examination at his earlier hearing, the subject-matter of that inquiry was limited to the issues of whether or not the defendant was the person sought. His guilt or innocence was not in issue. The State,

therefore, had no reason, at that hearing, to cross-examine the defendant.

■ Defendant's claim of necessity for the hearsay is in no way supported by the cases cited and is without merit. The availability of the witness was in his control. He had every right to decline to testify, but it cannot be said that he was unavailable simply because he could not be required to testify. In neither of the cases cited, *United States v. Anderson*, (1973 4th Cir.) 481 F.2d 685 or *Scherpig v. State*, (1929 Tex.) 112 Tex.Cr.R. 61, 13 S.W.2d 872, was the question in issue and neither in any way recognizes or even suggests that a defendant may place his own prior statement in evidence. In the *Anderson* case, it was said that the *state* could introduce the prior statement of a defendant, whether or not he elects to testify in his own defense. And in the *Scherpig* case, the defendant merely introduced a further part of the same prior statement, a portion of which had been previously introduced by the State. It does not appear that any objection had been interposed or would have been available, since the defendant was entitled to have his prior statement considered, if at all, in context.

## ISSUE III

■ Identification was a major issue in the trial. Several eyewitnesses for the State testified that they first identified Defendant from police photographs. They supplemented their testimony with an in-court identification of him. During Defendant's cross-examination of one of these eyewitnesses, the following dialog occurred:

"QUESTION: (by defense counsel): And isn't it true that those [police] pictures have been used to bolster your [in-court] identification?

"PROSECUTOR: We will object to that. That certainly makes an assumption.

"THE COURT: Sustained."

On appeal, Defendant contends that the question was proper. We disagree. The question was improper because it calls for the witness' conclusion rather than for facts

known to him and, thus, was objectionable as invading the province of the jury. *Gurley v. State*, (1976) 264 Ind. 552, 348 N.E.2d 16. There was no error in the trial court's ruling.

## ISSUE IV

■ Defendant's counsel made the following statement to the jury during his final argument:

"This case boils down to one real issue, identification. Now I think the court will instruct you on identification and will instruct you on the judging of the credibility of the various witnesses that we have had. Men like Arthur Patterson who testified that he had eaten something that was wine flavored and *that's the reason for the alcohol on his breath*." (Emphasis added)

The Prosecutor objected to the inference that Patterson had "alcohol on his breath" on the ground that there had been no testimony to that effect. The objection was sustained and the defendant challenges that ruling.

The actual trial testimony was as follows:

"QUESTION: by defense counsel: Am I mistaken that I smelled alcoholic beverages on your breath this morning?

"PATTERSON: No on the way over here I had an apple stick. It smells like wine."

Thus the witness had testified only that his breath may have smelled like wine. This was all the evidence upon that matter, and it cannot be said to evidence that the witness had an odor of alcohol on his breath. He did *not* testify that he had "alcohol on his breath." The argument amounted to an incorrect statement, of the evidence, and the court was correct in its ruling.

## ISSUE V

Prior to trial, Defendant asked for and received an order for discovery of all "pictures, mug shots, of photographs used by the State of Indiana in connection with the investigation of this case." Being unable to locate the same pictures used in the photo-

graphic lineup, the State provided the defendant with "substituted" photographs. These photographs were of the same individuals—though not necessarily taken at the same time as the ones used. There is nothing in the record to show that Defendant filed an objection or requested sanctions for the State's failure to produce the identical pictures used. During the trial, the defendant closely questioned several State witnesses about the photographic line-up, in an attempt to show that it had been unnecessarily suggestive and that these pictures had been used to bolster the witnesses' in-court identification. The defendant contends that, while the jury was deliberating, the Prosecutor located the original photographs and handed them to Defendant's counsel. Consequently, in his Motion to Correct Errors, Defendant requested a new trial based, partly, on newly discovered evidence, to-wit: the photographs actually used in the photographic line-up.

 To justify the granting of a new trial on the basis of newly discovered evidence, the petitioner or appellant must show:

". . . (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result." *Tungate v. State*, (1958) 238 Ind. 48, 54–55, 147 N.E.2d 232, 235–36. *See e. g. Clark v. State*, Ind., 378 N.E.2d 850; *Jackson v. State*, (1975) 264 Ind. 54, 339 N.E.2d 557; and *Emerson v. State*, (1972) 259 Ind. 399, 287 N.E.2d 867.

Additionally, Trial Rule 59(D) of the Indiana Rules of Trial Procedure requires that supporting affidavits accompany motions based on evidence outside the record. This rule was not complied with here. There is nothing in the record to support the allegations of newly discovered evidence contained in Defendant's brief. "We cannot hear additional evidence and certainly we cannot consider mere statements of counsel dehors the record." *Hansbrough v. State*, (1950) 228 Ind. 688, 695, 94 N.E.2d 534, 537, *cert. denied*, 340 U.S. 944, 71 S.Ct. 502, 95 L.Ed. 681.

 In any event, Defendant has failed to show that the production of the photographs probably would have changed the results of the trial, as required by the last factor of the test stated in the *Tungate* case, *supra*. The State called six eyewitnesses who positively identified Defendant as being one of the armed robbers. One witness, Roger Sartin, testified that he had observed the defendant for several minutes at very close range in a relatively well-lighted room. Another witness, Bertha Jones, testified that she had observed the defendant for several minutes from only four feet away in lighting that she described as "fair." The defendant attacked the credibility of the identification but his endeavors were, on the whole, unsuccessful. There has been no showing that the defendant's attempted impeachment of the photographic display evidence would have been aided had the photographs in issue been available at the proper time. But, even if we were to assume an enhanced impact in that regard, when we consider the ample evidence that the in-court identifications were based upon the witnesses' independent recollections, we cannot say that such an impeachment probably would have altered the verdict.

## ISSUE VI

In his Motion to Correct Errors, Defendant presented the affidavits of two jurors in which they recite various instances of alleged jury misconduct, to-wit: discussing evidence in the jury room prior to the case being submitted to them, discussing newspaper and television reports of the case, and making expressions of bias and prejudice against the defendant.

 It has long been the law in Indiana that a verdict may not be impeached by testimony of the jurors who return it. *Stinson v. State*, (1974) 262 Ind. 189, 313 N.E.2d 699; *Ward v. State*, (1846) 8 Blackf. 101.

Defendant acknowledges that this is the governing rule in Indiana but requests that it be re-considered and overruled. Perennially, this Court has been requested to re-examine this rule and, without exception, we have reaffirmed its validity, as have the great majority of our sister states. The reason for the rule was succinctly stated by Chief Justice Givan in *Stinson v. State, supra,* 262 Ind. at 198, 313 N.E.2d at 704:

> "If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries."

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.