David HARRISON, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 49A02–9006–PC–310.[1]

Court of Appeals of Indiana,
Fifth District.

July 22, 1991.

---

1. This case was diverted to this office by order of the Chief Judge.

Susan K. Carpenter, Public Defender, John Pinnow, Deputy Public Defender, Indianapolis, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee-respondent.

SHARPNACK, Judge.

David Harrison appeals from the denial of his petition for post-conviction relief (P–CR). We affirm in part and reverse in part and remand to the post-conviction court.

Harrison raises three issues on appeal which we restate as two issues:

1. Whether the trial court committed reversible error by not considering as evidence testimony and affidavits of jurors regarding the existence and nature of their contact with the bailiff

2. Whether the post-conviction court's finding that Harrison did not meet his burden of demonstrating ineffective assistance of counsel was contrary to law

We publish only that part of the opinion dealing with the first issue. The resolution of the second issue does not meet the criteria for publication as a "written opinion" under Appellate Rule 15(A)(2) and will be contained in a written memorandum decision.

The following is a statement of facts most favorable to the judgment of the post-conviction court. On the afternoon of April 26, 1983, officers Ralph Severeid and Yolanda Jorman received a radio dispatch that there was a burglary in progress at a yel-

low house on the corner of North Alabama and East Fifteenth streets in Marion County. The officers approached a yellow apartment house on the corner of that intersection. Officer Severeid investigated the outside of the house in search of signs of forced entry, but did not find any. He and Jorman then entered the common area of the apartment house and noticed that the door to Harrison's apartment was ajar.

Severeid and Jorman knocked on the door and identified themselves as police officers. They heard a voice, which Severeid later identified as Harrison's say "come in." The officers entered the apartment and proceeded to the kitchen where they saw Harrison, Reggie Blanton and Peter Strickland. The officers saw property strewn about the apartment, including jewelry, leather coats, and kitchen utensils. One of the pair of men with Harrison had a camera in his possession.

The officers asked Harrison and his companions if they knew anything about a burglary that had taken place. The three men responded that they knew nothing of a burglary. Officer Jorman left the apartment at that point, but Severeid remained in the apartment to speak to the men. At some point, Blanton and Strickland left with the camera. Jorman received another dispatch directing her to the correct house which was another yellow house near the intersection. Jorman spoke to the victim who identified the property taken from his house. The property he described matched the property that the officers had seen in Harrison's apartment. Jorman radioed Severeid, who was still in Harrison's apartment, and relayed the information. Severeid then arrested Harrison, and Jorman brought over the victim who identified the stolen items.

The state charged Harrison with one count of burglary, one count of theft and with being an habitual offender. The court appointed Christopher Zoeller, a public defender, as counsel for Harrison. Harrison decided to proceed *pro se* despite the trial court's explanation of the danger involved in such representation. At trial, the court permitted Harrison to proceed *pro se* with Zoeller as co-counsel. Zoeller did most of the actual questioning of witnesses and also made most of the arguments. Prior to trial, Zoeller had approximately ten to fifteen phone conversations with Harrison regarding his case. Some of the conversations were quite lengthy. In addition, Zoeller met with Harrison at the jail once to discuss Harrison's case.

Zoeller filed a motion to suppress which the court denied following an evidentiary hearing. Zoeller renewed the motion to suppress at trial, and the court again denied the motion following an evidentiary hearing outside the presence of the jury.

Harrison presented several witnesses in his defense. However, Strickland did not testify. Zoeller had intended to subpoena Strickland but Strickland could not be found to be served. Strickland had been in the Marion County Jail but was released shortly before the trial. Blanton, called by the state, testified that Harrison had told him to try to sell the camera that was in his possession when he left Harrison's apartment. He also testified that Harrison told him that he had broken into the house and wanted Blanton to help carry items out of the house. Zoeller cross-examined Blanton. In addition, Zoeller subpoenaed Blanton to testify for the defense. Blanton ignored the subpoena and disappeared.

The jury convicted Harrison of theft but acquitted him of burglary. The court reconvened the jury to hear evidence on the habitual offender charge. Following the presentation of the state's case, Harrison moved for mistrial on the basis that one of the felony convictions relied upon by the state had been vacated. The court declared a mistrial without prejudice. The state then amended the habitual offender charge to exclude reference to the vacated conviction. The court convened a different jury to hear evidence on the habitual offender charge. That jury convicted Harrison of being an habitual offender. The trial court sentenced Harrison to two years on his theft conviction enhanced by thirty years pursuant to his conviction of being an habitual offender.

Zoeller filed a motion to correct error on behalf of Harrison. In it he raised several claims, including a claim that the evidence was insufficient to support the conviction of theft. Zoeller did not assert as error the denial of the motion to suppress or the denial of Harrison's sixth amendment right to compulsory process. Harrison also filed a *pro se* motion to correct error. The court denied both motions. Harrison's direct appeal did not raise any of the issues asserted in this appeal.

Following Harrison's conviction, Elaine Held, a juror in Harrison's trial for theft and burglary, informed Harrison that the jury had received a sheet of paper from the bailiff during deliberations. Harrison unsuccessfully attempted to contact trial counsel. He then informed his appellate counsel of this development and provided counsel with a statement by Held. Counsel informed Harrison that he could seek leave from the supreme court to have the trial court consider a P–CR petition based upon newly discovered evidence. Harrison sought permission from the supreme court which denied his motion.

Following the affirmance of his conviction by the supreme court, 496 N.E.2d 49, Harrison brought the present P–CR petition. Harrison alleged that he was denied his right to be present at all stages of the proceedings against him as well as numerous allegations of ineffective assistance of trial and appellate counsel.

At the hearing on the petition, Held testified that, during their deliberations, the jury asked the bailiff for definitions of theft. She said that the bailiff gave them written, numbered definitions of theft, one of which was "possession of merchandise." She did not recall if the definitions differed from those given by the court in its instructions. Ronald Craig, the jury foreperson, testified that the bailiff brought back information in response a request from the jury. He stated that, to the best of his recollection, the information regarded the difference between theft and burglary. Harrison also introduced into evidence a note signed by Craig which read "[w]e the jury want to know if we are restricted to the items list on attached sheet, or all items mentioned during the course of the trial." On the bottom of the note the words "cant [sic] answer" appear. Craig testified that he did not write those words.

Harrison also submitted the affidavits of four jurors. Juror Graza remembered that the bailiff brought back a piece of paper which the jury read. Juror Sherlock remembered that the jury did contact the bailiff during the deliberations, but she could not recall what information they requested or whether the bailiff brought anything to the jury room. Juror Brinsley stated that the bailiff brought back definitions of theft on two typewritten pages. Juror Sullivan stated that the bailiff gave them a copy of the instructions regarding theft that the court had read to the jury. The testimony is uncontradicted that neither Harrison nor Zoeller was notified of the above described transaction.

The post-conviction court admitted the testimony and affidavits of the jurors over the objections of the state, but took this evidence under advisement pending a final determination of its admissibility.

The two bailiffs who worked for the court at that time also testified at the P–CR hearing. Bailiff Mahern testified that he did not recall if the transaction in question occurred. He could not remember if he was even the bailiff for those particular deliberations. He testified that the words "cant [sic] answer" were not in his handwriting. Bailiff Demoss testified that the disputed handwriting was hers, but she could not recall signing the note or if she was the bailiff for those particular jury deliberations.

The court denied Harrison's P–CR petition. In its findings of fact and conclusions of law the court found that Harrison failed to prove by a preponderance of the evidence that the representation of either trial or appellate counsel fell below the required standards.

With regard to Harrison's claim that he was denied the right to be present at all stages of the criminal proceeding against him, the court found:

9. That the law in Indiana is that a juror is incompetent, by testimony or affidavit, to impeach the verdict of the jury of which he was a member

10. That petitioner has failed to prove by a prepondenance [sic] of evidence that there was an improper contact with the jury

The court also attached a memorandum to its findings and conclusions. In that memorandum the court discussed the law with regard to the admission of juror testimony, concluded that testimony by jurors is inadmissible to impeach their verdict and found that Indiana recognizes no exceptions to that rule. The court then wrote:

Concluding therefore, as we must, that the present law in Indiana prevents this court from considering as proof the testimony or affidavit of jurors to impeach their verdict and, thus, there being insufficient evidence on this issue, the Court finds that the petitioner has failed in his burden of proof.

 Indiana adheres to the common law rule that a verdict may not be impeached by evidence from the jurors who return it. *Stinson v. State* (1974), 262 Ind. 189, 198, 313 N.E.2d 699, 704. However, our supreme court has recognized a distinction where testimony or affidavits of jurors are offered to show that the jury was exposed to improper, extrinsic materials during their deliberations. *Fox v. State* (1984), Ind., 457 N.E.2d 1088. A discussion of *Fox* is necessary to illustrate the parameters of this distinction.

In *Fox*, the appellant alleged that the verdict against her was tainted. She made this allegation in her motion to correct error to which she attached the affidavits of the bailiff, in which he swore that he had found a copy of *Newsweek* in the jury room the morning following the jury's deliberations. The cover of the magazine depicted a 'smoking .38' with the title 'The Epidemic of Violence in America' The defendant was being tried for the offense of armed robbery. *Id.* at 1088. The court of appeals reversed the trial court's denial of the motion and remanded with instructions to reassemble the jury for a voir dire examination within the guidelines prescribed in *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819. In *Lindsey*, the court had held that, where potentially prejudicial publicity is brought to the trial court's attention during the conduct of the trial, the court, at a minimum, must interrogate the jurors as to whether they were exposed to the publicity and should examine those jurors acknowledging exposure as to the extent and likelihood of prejudice. *Lindsey*, 260 Ind. at 356, 295 N.E.2d at 822–823.

The *Fox* court distinguished *Lindsey* from the case before it explaining:

The *Lindsey* problem arose during trial, while the judge was in command and under the responsibility of seeing that it was conducted as fairly as possible. The case before us presents a post verdict problem. In *Lindsey*, it was reasonable to require the judge to act upon a showing of a substantial possibility that the jury had been improperly exposed to extraneous material having a clear potential to taint its verdict. It is not reasonable, however, and would be counter-productive to require the judge, after a verdict has been returned, to run willy-nilly in search of evidence of a prejudicial impropriety upon the mere *claim* of a *possible* impropriety which, if it did in fact, occur, *possibly* harmed the claimant. The *Lindsey* procedures are not appropriate and are not available for attacking a verdict. [citation omitted]

*Fox*, 457 N.E.2d at 1092 [emphasis in original]. The court also noted that a *Lindsey* inquiry, in its second stage, would permit jurors to testify as to the influence the extraneous material had upon their deliberations and therefore would violate the rule against allowing jurors to impeach their verdict. *Id.*

The court noted that the case before it, in which the jury allegedly was exposed to extraneous, prejudicial material discovered after the verdict had been returned and the jury discharged, was a novel question in Indiana. The court looked to federal cases and found that a threshold question was whether or not the jury had been exposed

to the material in question. *Id.* The court looked to the evidence before it and said:

> Without a prima facie showing of exposure, we see no basis for the trial judge to consider the likelihood of prejudicial impact or the ultimate question of the remedial action required. Here, not only was there no such showing, the motion and affidavits did not even allege it. The most that can be said for them is that they alleged that the jury might have been exposed to the magazine cover and the companion editorial. There was no averment and no evidence that any juror had, in fact, seen or discussed the material or even that it had been in the jury room during the deliberations. The affidavits state only that the magazine was found in the jury room on the morning following the return of the verdict. We recognize a substantial possibility that the magazine was, in fact, in the jury room during deliberations; however, to say that it was and to say further that one or more jurors examined it requires a degree of speculation that is unnecessary and, therefore, inappropriate.
>
> Although a juror may not impeach his verdict, he may give testimony as to what transpired during the trial including the deliberations. *Mattox v. United States,* (1892) 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; *Llewellyn v. Stynchcombe,* (5th Cir.1980) 609 F.2d 194; *United States v. Vasquez,* (9th Cir.1979) 597 F.2d 192. If defendant, therefore, had a bona fide claim of jury taint, it behooved her first to allege that exposure did occur, as a matter of fact, and to support the claim with evidence, by affidavit and/or testimony, in the discretion of the trial judge. If, and only if, a claimant establishes, by a preponderance of the evidence, that the jury saw or heard the material complained of, should the judge be put to the task of determining the likelihood of the verdict having, thereby been polluted.

*Id.* at 1093–1094. The petitioner did not introduce any evidence other than the affidavits of the bailiff. *Id.* at 1093. The supreme court affirmed the trial court's denial of the motion to correct errors. *Id.* at 1094.

In *Mattox v. United States* (1892), 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917, one of the federal cases cited in *Fox*, the Supreme Court found that it was reversible error for the trial court to exclude jurors' affidavits concerning their exposure to a newspaper story about the trial under consideration as well as statements by the bailiff that the victim in the case was the third person that the defendant had killed. The court noted that the jurors did not testify as to what influence the newspaper story or the bailiff's comments had upon them, but confined their statements to the content of the story and the bailiff's comments. 146 U.S. at 149, 13 S.Ct. at 52, 36 L.Ed. at 920–921. The Court then adopted as its rule that a "[J]uryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." 146 U.S. at 149, 13 S.Ct. at 53, 36 L.Ed. at 921, quoting *Woodward v. Leavitt* (1871), 107 Mass. 453.

In this case, the trial court should not have excluded from consideration the testimony and affidavits of the jurors on the basis of the rule that the testimony of a juror is inadmissible to impeach his verdict. With the exception of the last line on the affidavits of jurors Brinsley, Sullivan and Garza, Harrison did not offer any statement by the jurors as to the effect that the alleged information provided by the bailiff had upon their deliberations. Harrison alleged that the bailiff had communications with, and provided information to, the jurors. If proven to the extent claimed by Harrison, such actions clearly would have been improper. He offered the affidavits and testimony to demonstrate that, in response to the jury's request, the bailiff provided information without the defendant or counsel having been notified. This is exactly the type of evidence regarding the *exposure* of the jurors to improper, extraneous materials that is admissible under *Fox* and the cases cited therein. In fact, the reason the *Fox* court found it unnecessary to determine whether the material in question was so prejudicial that it tainted

the verdict was precisely because the petitioner in that case failed to provide evidence from jurors that they were actually exposed to the material. *Fox*, 457 N.E.2d at 1093.

The portion of *Fox* that stands for the proposition that juror testimony is admissible to the extent that it goes to prove exposure to extrinsic material is arguably dicta. The state has not made such an argument, but the trial court expressed such a view in the memorandum attached to its findings. This position is strengthened by the fact that there is Indiana precedent, not specifically referred to in *Fox*, for the proposition that jurors may not testify to the existence of any improper contact between the bailiff and the jury. *Widup v. State* (1967), 250 Ind. 1, 230 N.E.2d 767; *Stauffer v. Lothamer* (1981), Ind.App., 419 N.E.2d 203; *Laine v. State* (1972), 154 Ind.App. 81, 289 N.E.2d 141. In our view, those cases are impliedly overruled by *Fox*. Despite the fact that the petitioner in *Fox* did not offer juror affidavits or testimony, the court's discussion of the admissibility of such items was clear and necessary to explain its finding that the petitioner had not met her burden of proof. We must therefore follow *Fox* in this case.

█ The state reads *Fox* to mean that the post conviction court may exercise its discretion whether to admit testimony by jurors regarding their exposure to extraneous materials based upon whether there has been independent evidence from court officials establishing such exposure. We disagree with that interpretation of *Fox*.

█ There is no threshold requirement that court officials or other nonjurors testify that the jury was actually exposed to improper material or had improper contact with the court in order for juror testimony to be admissible. Such a requirement would mean, in effect, that jurors may testify only where their testimony is unnecessary or merely corroborative. Furthermore, it would be improper for the trial court to base its discretion to refuse juror testimony as such on the fact that there is no independent evidence on the same issue,

because the concern regarding the competence of juror testimony is not one of reliability but of policy. *See Stinson v. State* (1974), 262 Ind. 189, 198, 313 N.E.2d 699, 704. The post-conviction court, in its discretion, could have refused to consider the testimony and affidavits of the jurors in this case only if there was a reason for exclusion other than the rule that testimony of jurors is inadmissible to impeach their verdict. Neither the state nor the trial court has asserted any other reason for the exclusion of the evidence in question. Therefore, the exclusion of the testimony and affidavits from consideration in this case was error.

█ The next question we must address is whether the error in not considering the affidavits and testimony requires reversal. We will only reverse where the error in the exclusion of evidence harmed the party asserting error. *American Employers' Insurance Co. v. Cornell* (1948), 225 Ind. 559, 576, 76 N.E.2d 562, 569. It is the responsibility of the party asserting error to demonstrate prejudice resulting from the exclusion. *Gasich v. Chesapeake & Ohio R.R. Co.* (1983), Ind.App., 453 N.E.2d 371, 379. Harrison has demonstrated harm from the court's erroneous exclusion from consideration of the evidence in question. Further, as Harrison points out, the state does not argue harmless error in its brief.

█ A criminal defendant has the right to be present at all stages of a criminal proceeding. IND. CONST. art. 1 § 13. In addition, I.C. § 34-1-21-6 provides that: "[a]fter the jury have retired for deliberation ... if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys." Our supreme court has found that statute to be applicable to criminal proceedings. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. Communication between the court and the jury regarding instructions that takes place without notice to the defendant or her counsel violates both art. 1

§ 13 and I.C. § 34-1-21-6. *See Alexander v. State* (1983), Ind., 449 N.E.2d 1068. Once such a violation is established, there is a presumption of harm, and the burden is on the state to show that no harm resulted from the improper contact. *Id.* at 1073.

The testimony of Craig and Held was vital to Harrison's claim that he was denied his right to be present at all stages of the proceeding against him. While neither juror could recall exactly what was written on the material that the bailiff provided, both testified that the bailiff returned with written material in response to the jury's question. When combined with the testimony of Harrison and his attorney, Chris Zoeller, that neither of them was contacted about the communication, the evidence could support the conclusion that there was an improper contact. The burden would then shift to the state to demonstrate that Harrison was not harmed. *Id.* at 1074.

■ Whether the state met its burden of rebutting the presumption of harm is a question of fact for the post-conviction court. However, we will provide some guidance on this issue. The state may rebut the presumption of harm by satisfying the post-conviction court that the bailiff responded to the alleged request by giving the jurors a written copy of the entire body of final instructions that the trial court had read to the jury. *Denton v. State* (1983), Ind., 455 N.E.2d 905, 909.

■ However, the state, as a matter of law, cannot rebut the presumption of harm by showing that the bailiff gave the jurors a copy only of the final instructions regarding theft or theft and burglary separate from the rest of the final instructions. While we find no Indiana decisions that squarely address this issue, a line of cases often identified with *Lewis v. State* (1981), Ind., 424 N.E.2d 107 provides guidance. Those cases all involved fact patterns where the trial court responded to juror questions after the jury had begun deliberations, but the court did so in the presence of defense counsel. In *Lewis*, the supreme court stressed that the proper response to juror questions after the jury has begun deliberations is to reread the entire body of

final instructions without further comment. *Id.* at 111. The cases in that line find reversible error where the trial court reads an *additional* instruction or makes additional comments in response to questions by jurors. *See e.g., Cornett v. State* (1982), Ind., 436 N.E.2d 765; *Wallace v. State* (1981), Ind., 426 N.E.2d 34. The rationale in these cases is that requiring trial courts to respond only by rereading from the body of the final instructions prevents judges from giving special emphasis, inadvertent or otherwise, to a particular issue in the case. *Cornett v. State* (1982), Ind., 436 N.E.2d 765, 766.

■ In *Crowdus v. State* (1982), Ind., 431 N.E.2d 796 the supreme court applied the rationale from *Lewis* and its progeny to a case in which the trial court gave instructions in response to juror questions after the jury had begun deliberations. One instruction was an "Allen" type charge similar to the instruction in *Lewis*. The other instruction was a simple recitation of the final instruction on entrapment that the trial court had read to the jury at the close of evidence. The supreme court found that the trial court committed reversible error by giving the additional "Allen" charge, but it also found that the trial court acted improperly by rereading the entrapment instruction. *Id.* at 798. The court found that the danger of the trial court giving special emphasis to a particular issue or tending to tell the jury what to do existed when the court reread the entrapment instruction without also rereading the rest of the final instructions. *Id.* While the court did not specifically state that rereading the entrapment instruction constituted reversible error by itself, the court applied the same rationale for why such an instruction is improper as it applied to the "Allen" charge. Therefore, rereading one or more instructions in isolation from the body of final instructions should also constitute reversible error.

Here, the testimony is in conflict regarding the content of the bailiff's response. Held testified that the bailiff returned with a page full of numbered definitions of theft, one of which was "possession of mer-

chandise." Craig testified that, to the best of his recollection, the bailiff brought back written definitions of the difference between theft and burglary. However, he could not recall exactly what the sheet said or if the instructions on the sheet were definitely different from the instructions that the court had read to them. Brinsley testified by affidavit that the bailiff brought back typewritten definitions of theft. Sullivan testified by affidavit that the bailiff brought a copy of the instructions the court had given. Graza remembered only that the bailiff brought back a piece of paper, and Sherlock did not recall if there was any response to the jurors' inquiry.

We reverse and remand to the post-conviction court to reconsider Harrison's claim that he was denied the right to be present at all stages of the proceeding in the light of all evidence received, including the testimony and affidavits of the jurors to the extent that they go to the issue of whether the bailiff had any improper contact with the jury and, if so, the exact nature of that contact. The court properly excluded juror testimony regarding the effect the material that the bailiff allegedly gave to them had upon their decision.

The issues raised by Harrison regarding effectiveness of trial and appellate counsel are separate from the issue regarding the exclusion of the jurors' affidavits and testimony. We decide these issues while they are before us for the sake of finality and judicial economy, inasmuch as the case may be on appeal again following the post-conviction court's reconsideration of the jury contact issue. We conclude that the post-conviction court was correct in determining that Harrison failed to demonstrate ineffective assistance of trial or appellate counsel. Our disposition of this issue is contained in a memorandum decision which begins at this point.

REVERSED AND REMANDED.

**1.** This case was reassigned to this office on

RUCKER, J., concurs.

BARTEAU, J., concurs in result.