Martha SIENKOWSKI, Appellant–Plaintiff,

v.

Frederick E. VERSCHUURE, Appellee–Defendant.

No. 46A03–1101–CT–5.

Court of Appeals of Indiana.

Sept. 9, 2011.

---

Debra Lynch Dubovich, Levy & Dubovich, Highland, IN, Attorney for Appellant.

David Becsey, Roger K. Kanne, Bobby J. Avery–Seagrave, Ziegler Cohen & Koch, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Martha Sienkowski (Sienkowski), appeals the trial court's Order denying her motion to vacate judgment and request for a new trial and granting Appellee–Defendant's, Frederick E. Verschuure (Verschuure), motions to strike affidavits and letters of jurors.

We affirm.

### ISSUE

Sienkowski raises one issue on appeal, which we restate as: Whether the trial court erred in refusing to consider an affidavit from a juror which established that the verdict entered in a personal injury case did not appear to be the verdict the jury had unanimously agreed upon.

### FACTS AND PROCEDURAL HISTORY

On February 4, 2008, Sienkowski filed a Complaint against Verschuure, alleging negligence in a motor vehicle accident and claiming damages. On June 28 through July 2, 2011, a jury trial was conducted. At the close of the evidence, the trial court instructed the jury on comparative fault and handed them two different verdict forms, one awarding a verdict for the defendant, the other awarding a verdict for the plaintiff. After approximately two hours of deliberation, the jury returned to the courtroom with Verdict Form B—Verdict for Plaintiff. Verdict Form B, as initially completed by the jury, provided as follows:

### VERDICT FORM B

### VERDICT FOR PLAINTIFF

We, the Jury, find for the Plaintiff, [Sienkowski], and we assess the percentages of fault as follows:

| | |
|---|---|
| Plaintiff, [Sienkowski] | 38% |
| Defendant, [Verschuure] | 62% |
| TOTAL | 100% |

We further find that the total amount of damages which the Plaintiff, [Sienkowski], is entitled to recover, disregarding fault, is the sum of $ 207,600. (Enter this amount below as Total Damages.)

We, the Jury, now find for the Plaintiff, [Sienkowski], and find against the Defendant, [Verschuure], in the sum of:

| | |
|---|---|
| Total Damages | $207,600 |
| [Verschuure's] percentage of fault | × 62% |
| [Sienkowski's] Verdict Amount | = $336,300. |

Date: 7/2/10      Signed by Foreperson

(Appellant's App. p. 23).

A mathematical error was found in the jury's calculation and the trial court sent the jury back to the jury room. After doing research, the trial court informed the attorneys for both parties, outside the presence of the jury that

> I think based on the question from the jury as well as the multiple numbers on the form, I'm unable to determine what their intent and verdict is and would be. And based on that, I'm going to bring in the jury and direct them to retire with the—pointing out the mathematical inconsistencies and see where we go from there.

(Transcript pp. 33–34). After having instructed the jury, the jury members were again returned to the jury room to reconsider the computations.

After further deliberations, the jury issued the same Verdict Form B, correcting the mathematical error by striking "$336,-300" and replacing it with "$128,712." (Appellant's App. p. 23). The trial court read the verdict form in open court. Although counsel for both parties were offered the opportunity to poll the jury, both declined. Also, both parties replied negatively when asked by the trial court if there was "any reason that this should not be entered as a verdict and a judgment at this time." (Tr. p. 37).

On July 6, 2010, Sienkowski filed a motion to vacate the judgment and request for a new trial. Attached to the motion were an affidavit of a first juror and a letter of a second juror expressing that a mistake had been made when filling out the verdict form and the verdict entered was not the verdict the jury had agreed on during deliberations. Specifically, the affidavit reads, in pertinent part:

(2) After we all came to agreement that [Sienkowski] should be awarded [ ] $336,300 Dollars, we had trouble trying to figure out the verdict form, and sent a note through the bailiff to that effect seeking further instructions.

(3) Because the paragraph at the middle of the form called for us to enter an amount that Ms. Sienkowski should receive "disregarding fault," we thought see [sic] would receive that sum without reduction for fault and then an additional sum after a percentage reduction, resulting in Ms. Sienkowski receiving a total of the two amounts.

(4) When we were given no additional help with the verdict form, we completed it as best as we could entering the amount we felt that [Sienkowski] should

receive, or $336,300 is the bottom blank entitled "Plaintiff's Verdict Amount."

(5) When we were sent back to the Jury Room with instructions to correct the verdict form because it was arithmetically inconsistent, we entered [ ] $127,712 Dollars, believing that [Sienkowski] would receive the sum of the two damage amounts added together, yielding a total Judgment for [Sienkowski] of $336,300.

(6) When I was leaving the Court House parking lot, I saw [Sienkowski's] attorney walking toward the parking lot and motioned him over to my truck and said: "This is b____ s____." "All of us wanted Ms Sienkowski to get $336,300" and I showed him the notes I had written during deliberations.

(7) I feel terrible that our confusion about how to complete the verdict form might result in [Sienkowski] getting much less than we jurors unanimously agreed that [she] should have, and I hope this can be corrected.

(Appellant's App. pp. 17–19). On July 21, 2011, Verschuure filed a motion to strike the affidavit and letter, as well as a brief in opposition to Sienkowski's motion to vacate judgment and request for a new trial.

On August 10, 2010, following a status conference and with the permission of the trial court, Verschuure requested the appointment of a special judge to hear Sienkowski's motion for a new trial. The trial court granted the motion and a new trial judge was appointed and accepted jurisdiction. On December 2, 2010, Sienkowski filed a memorandum with attached exhibits. Four days later, Verschuure filed a motion to strike portions of Sienkowski's memorandum and the juror affidavit and letter, a motion to quash Sienkowski's subpoenas directed to the former jury members, and a brief in support.

On December 9, 2010, the trial court conducted a hearing on the parties' pending motions. The following day, the trial court issued its Order, granting Verschuure's motions to strike the letter and affidavit and to quash the subpoenas, and denying Sienkowski's motion. On January 13, 2011, the trial court amended its Order because of a scrivener's error on its original Order but reaffirmed its ruling in every respect. Sienkowski now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

■ Sienkowski contends that the trial court erred in denying her motion to vacate judgment and request for a new trial. Sienkowski maintains that because there is evidence that the verdict entered by the trial court is not the actual verdict "which all of the jurors unanimously agreed be entered," the trial court should conduct a post-trial hearing to determine the unanimously agreed upon verdict. (Appellant's Br. p. 11).

■ It has long been established in Indiana that a jury's verdict may not be impeached by the testimony or the affidavit of the jurors who return it. Despite Sienkowski's allegation that this is an issue of first impression, Indiana courts have had many occasions to reaffirm this principle. *See, e.g., Ward v. St. Mary Medical Center of Gary*, 658 N.E.2d 893 (Ind.1995); *Karlos v. State*, 476 N.E.2d 819 (Ind.1985); *Bryant v. State*, 270 Ind. 268, 385 N.E.2d 415 (1979); *Stinson v. State*, 262 Ind. 189, 313 N.E.2d 699 (1974). In *Stinson*, our supreme court articulated the policy concerns behind this rule as:

If this [c]ourt were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end

to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries.

*Id.* at 198, 313 N.E.2d 699.

Although this is a generally recognized rule, Indiana Evidence Rule 606(b) provides three exceptions:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) or the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

*See also Harrison v. State*, 575 N.E.2d 642, 646 (Ind.Ct.App.1991).

As the case at bar does not fall within one of the three enumerated exceptions of Ind. Evid. R. 606(b), Sienkowski attempts to evade the application of the general rule by asserting that

[t]he verdict is the agreement which the jurors unanimously reach after their considered deliberations. The verdict is

not the mere paper upon which such agreement is written. If the writing on the paper is wrong because of inadvertence, oversight or mistake, the verdict form does not contain the jury's actual verdict. When bringing such an error to the trial court's attention, the inquiry is not into the "validity" of the verdict, the inquiry is whether the information written on the verdict form is in fact the verdict.

(Appellant's Br. pp. 11–12).

Sienkowski is mistaken. When one disputes the information written on the verdict form, one is in effect contending that the verdict is wrong, which amounts to a direct attack on the 'validity' of the verdict. Asking the jurors during a post-trial hearing whether the amount written on Verdict Form B represents their agreement reached during deliberations directly impeaches the verdict. Therefore, we find that the trial court did not err when it denied Sienkowski's motions and granted Verschuure's motions.

### CONCLUSION

Based on the foregoing, we hold that the trial court appropriately refused to consider an affidavit from a juror to impeach the jury's verdict post-trial.

Affirmed.

NAJAM, J., and MAY, J., concur.