**Bobby Dean WINE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 85S00–8808–CR–717.**

Supreme Court of Indiana.

June 15, 1989.

Alan J. Zimmerman, Wabash, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Conspiracy, for which he received a sentence of eight (8) years, enhanced by twenty (20) years by reason of his status as an habitual offender, and the crime of Theft, for which he received a four (4) year sentence, the sentences to run concurrently.

Appellant's brief was prepared by court-appointed counsel. Appellant *pro se* filed a petition for a writ of *habeas corpus* in the trial court in which he challenged the legality of his agreement with the prosecuting attorney to take a polygraph test. He further claimed that the polygraph operator lied when he testified at trial that appellant failed the polygraph examination.

Appellant reasoned that since the prosecutor had agreed if he passed the polygraph test the charges against him would be dismissed and that he did in fact pass the test, he was therefore entitled to be released. He alleges the trial court erred in denying his petition for writ of *habeas corpus*.

The facts are: Freddie Nelson, who testified that he was a co-conspirator with appellant, stated that early one December morning in 1986 he went to the house of appellant where they discussed burglarizing a coin shop. Their agreement was that Nelson was to go inside and appellant was to maintain a watch in the alley. Appellant obtained a pair of white stretchable gloves for Nelson to wear and a pillowcase.

At appellant's suggestion, Nelson broke the window, then they retreated to appellant's house from where they could see the coin store. They waited twenty minutes to see if the police would come. When no police arrived, they returned to the shop and Nelson squeezed in between the bars. As soon as he touched the floor, an alarm went off. Again they retreated to appellant's porch and after some minutes the police arrived.

Appellant laughed at Nelson and stated that they would have had plenty of time to get some things from the shop before police arrived. During the conversation, appellant mentioned the Swifty Oil Station where Nelson's sister's boyfriend was the manager. Appellant asked Nelson if he could obtain keys to the station. They then went to Nelson's sister's home where Nelson entered. He found everyone was asleep. He thereupon went into the bed-

room and obtained the keys to the station from the manager's pockets.

He then went back to appellant's apartment, obtained the pillowcases and gloves, and went to the filling station where appellant stayed to watch for the police and Nelson entered using the keys. He also used the keys to unlock a large cabinet where money was obtained which was put in the pillowcase. He also opened a floor safe with a key and took rolls of coins and loose bills. He then used a hammer to break the top plate of the safe to make it look like it had been opened by force. Nelson exited the station and gave the money he had taken to appellant. He advised appellant there was a section in the safe he could not open with the keys. Appellant obtained a tire jack and they tried but failed to open that portion of the safe.

Nelson then unlocked a door in an area where cigarettes were stored and filled a box with Marlboro cigarettes and dragged it to where appellant was maintaining a watch. Appellant then sent him back to get Winston cigarettes. Nelson returned with twelve to fifteen cartons of Winstons. They then returned to appellant's home where they divided the money and property obtained in the burglary.

Nelson then returned to his sister's home and replaced the keys in the manager's pants pocket. During his testimony, Nelson admitted he had attempted to commit suicide within the past two weeks by taking Valium and Darvocets. Following hospital treatment, Nelson was evaluated by Dr. McNab. Nelson stated that they were discussing the possibility of sending him to Logansport Hospital for a drinking problem.

Nelson's general description of the manner of entry and the damage done inside the station was verified by Allen Lee, the manager, and by Carl Rife, who opened the station on the morning of the burglary and discovered the entry. Janelle Henderson, a friend of appellant's wife, was at appellant's home late on the night of the burglary when Nelson came to the door and asked for appellant. She stated appellant left the house with Nelson. About fifteen or twenty minutes later appellant came back, asked his wife for a pillowcase, and when he obtained one, he left again. She saw him get into Nelson's car and leave. She saw them come back from across the street from a coin store and a few minutes later she heard a burglar alarm go off. She stated that after the police left, appellant and Nelson left the house and went toward the Swifty Oil Station. She stated that the next morning there were approximately fifteen cartons of cigarettes in appellant's refrigerator.

Randall Black testified that he was a polygraph operator, and appellant's physiological reactions to questions posed concerning the burglary indicated that appellant was attempting deception. This testimony was received pursuant to an agreement entered into between the prosecuting attorney and appellant.

■ Appellant claims the trial court erred in denying him the right to proceed *pro se* rather than to be represented by court-appointed counsel. The record discloses that on March 24, 1987 there was a hearing on a motion to suppress the results of the polygraph examination. During that hearing, notwithstanding representation by court-appointed counsel, appellant attempted to personally argue with the court. The court advised him that he should relay his questions to his attorney.

At that time, appellant asked to be permitted to proceed *pro se*. The court then advised him that he had a right to do so but stated that he would need a showing of appellant's willingness, understanding, and capacity to proceed *pro se*. The record shows that appellant made no further attempt to proceed *pro se* nor did he make any statement demonstrating his willingness, understanding, and capacity to do so.

This record discloses there was no further attempt by appellant to proceed *pro se* until the close of the habitual offender phase of the trial. The trial court was justified in assuming that appellant had abandoned his desire to proceed *pro se* at the hearing on the motion to suppress. Although it is not shown on the record, appellant claims that during the trial he

made several attempts to request that he be permitted to proceed *pro se* but that his attorney prevented him from doing so by, among other things, slapping down his hand every time he would try to raise it to get the judge's attention.

■ In view of the fact that this Court has held that a request to be permitted to proceed *pro se* made during the trial has come too late, *Broadus v. State* (1986), Ind., 487 N.E.2d 1298, we cannot say that appellant's attorney acted improperly in trying to prevent appellant from making a demonstration in the presence of the jury which in all probability would have ended in failure and placed appellant in a bad light. We see nothing in this record which would support appellant's claim that he was prohibited from proceeding *pro se.*

■ Appellant contends the trial court erred when it received a communication from the jury and sent a message back to the jury without calling counsel into the courtroom. There is no question that when a trial judge communicates with the jury he should bring the parties into the courtroom so that they can be privy to the communications between the judge and the jury. *Averhart v. State* (1984), Ind., 470 N.E.2d 666, *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. However we have also held that the presumption of reversible error in this type of situation is rebuttable. In reviewing this situation, we will look to the nature of the communication and the effect it might have had upon a fair determination. *Marsillett v. State* (1986), Ind., 495 N.E.2d 699.

■ In the case at bar, following the incident, the court advised the attorneys that he had in fact received a communication from the jury to the effect that they were unable to reach a decision and that his only communication to them was that he would permit them to deliberate for one more hour and then would call them into the courtroom. It was during this hour that they reached a decision in the case. The jury made no request for any additional information nor did the judge attempt to give them any further instruction other than to tell them he would call them back into the courtroom after one more hour.

Although technically the judge should have brought the parties into the courtroom even for such communication, we cannot say that the failure to do so constituted reversible error. We can see no possible prejudice which appellant could have suffered by reason of the communication between the court and jury. *Id.*

■ Appellant claims he was denied a fair trial when his attorney refused to allow him to testify in his own behalf. In the case at bar, as clearly demonstrated by the subsequent hearing on his status as an habitual offender, appellant had an extensive criminal record. His attorney was well within the bounds of proper representation in advising his client that it would be a mistake to assume the witness stand and subject himself to cross-examination concerning his record. By giving such advice to appellant, we cannot say that counsel violated the standards set down in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ Appellant claims the trial court erred in denying his pretrial motion for a continuance due to newly-discovered evidence when he discovered just prior to trial that Nelson had attempted suicide a few days earlier. Last-minute continuances are not generally favored and are reviewed only for abuse of trial court discretion. *Underwood v. State* (1987), Ind., 515 N.E.2d 503; *Parr v. State* (1987), Ind., 504 N.E.2d 1014.

For several months, appellant had been aware that Nelson would be a witness against him. During trial, Nelson's attempted suicide was placed in evidence and he was questioned at length concerning that episode. He testified that he was despondent because of the grief he had brought to his mother and because of his drinking problem. He testified at length in a very lucid and forthright manner, both on direct and cross-examination. There is nothing in this record to indicate the trial court abused its discretion in refusing a continuance. This is especially true when testimony by other witnesses tended to

substantiate Nelson's version of the occurrence. The trial court did not commit reversible error in refusing the continuance.

■ Appellant contends the trial court erred in permitting Nelson to testify in support of the conspiracy charge. He argues the trial court violated the rule against proving a conspiracy by out-of-court acts or statements of a co-conspirator not made in furtherance of the conspiracy, citing *Montgomery v. State* (1982), Ind. App., 439 N.E.2d 646. He also cites *Patton v. State* (1961), 241 Ind. 645, 175 N.E. 2d 11 for the corollary rule that post-conspiracy statements or guilty pleas by co-conspirators should not be admitted. He claims that because Nelson testified he "made a statement" and "intended" to make a plea he thus was testifying in violation of the principles set down in *Patton.*

However, in the case at bar, Nelson clearly testified in detail concerning the conspiracy from its inception to its completion. It was incumbent upon the State to reveal, and the appellant was entitled to explore, Nelson's reasons for testifying against appellant and to disclose to the jury that he might receive special consideration because of his testimony. Clearly the evidence presented by Nelson's testimony was admissible to show a conspiracy. The only mention of a possible plea arrangement with the State was properly submitted not as primary evidence of the conspiracy which had already been established but as proper evidence to inform the jury of the possible bias and prejudice Nelson might have in giving his testimony. *Fox v. State* (1986), Ind., 497 N.E.2d 221; *Bland v. State* (1984), Ind., 468 N.E.2d 1032. We see no reversible error concerning the testimony of Nelson.

■ Appellant claims the trial court erred in submitting the habitual offender phase of the trial to the jury without re-swearing the jury. There is no merit to this contention. When a person is charged with a crime and the State also alleges they are an habitual offender, Ind.Code § 35–50–2–8 requires that the trial be bifurcated: that the jury first determine the defendant's guilt on the instant charge, and that they then reconvene to determine the defendant's status on the charge that he is an habitual offender.

This Court has consistently held that this bifurcated proceeding is not to determine whether the defendant is guilty of another charge but is merely to find the facts alleged by the State that the defendant is in the status of being an habitual offender. *Wise v. State* (1980), 272 Ind. 498, 400 N.E.2d 114; *Ferguson v. State* (1980), 273 Ind. 468, 405 N.E.2d 902.

The purpose of bifurcating the proceeding is to assure that the appellant receives a fair trial on his instant charge before the jury receives information as to his past record. *Turpin v. State* (1982), Ind., 435 N.E.2d 1. The habitual offender phase of the proceedings is not a separate trial but is a bifurcated continuation of the entire proceeding. The jury in the case at bar had been properly sworn at the commencement of the proceeding and it was unnecessary for the trial judge to re-administer the oath prior to the habitual offender phase.

■ Appellant claims the evidence to support the habitual offender finding is insufficient in that State's witness, Cecil Ray Williams, testified that appellant was the same Bobby Dean Wine who was arrested on the charge shown in State's Exhibits Nos. 3 and 6. He further states that the witness did not state that it was the same Bobby Dean Wine who was convicted of those charges. State's Exhibit No. 4 is a judgment showing the sentencing of Bobby Dean Wine on the charge described in State's Exhibit 3. State's Exhibit 7 is the sentence of Bobby Dean Wine on the same charge as that described in Exhibit 6. The testimony of Cecil Ray Williams is sufficient to support the identification of appellant with these exhibits.

Appellant contends there is insufficient evidence in this cause to support the verdict of the jury. As set out above, we find the facts in this case amply support the verdict of the jury.

As to appellant's attempt to appeal the denial of his petition for writ of *habeas corpus* filed *pro se* in the trial court, we

find that he totally failed to present allegations to the trial court that would entitle him to relief. His allegations that the State agreed that he would be discharged if he passed the polygraph test and that the polygraph operator lied when he testified that appellant was attempting deception when answering specific questions concerning the crime, in no way establishes that such are truly the facts. The trial court did not err in denying appellant's *pro se* petition for writ of *habeas corpus*.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.