### Barry L. JEWELL, Appellant–Defendant,

v.

### STATE of Indiana, Appellee–Plaintiff.

#### No. 47A05–9212–CR–430.[1]

Court of Appeals of Indiana, First District.

Nov. 23, 1993.

**1.** This case was transferred to this office on September 21, 1993, by direction of the Chief

Judge.

F. Thomas Schornhorst, Bloomington, for appellant-defendant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Jodi Kathryn Rowe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Barry L. Jewell appeals his convictions after a jury trial of Burglary and two counts of Battery for which he received an enhanced, aggregate sentence of fifty-eight years. Jewell raises nine issues. However, as one issue requires that we reverse, we address it only. Restated, it is:

> whether the trial court's ex parte communications with the jury during deliberations require reversal?

## FACTS

The facts in the light most favorable to the verdict indicate that during the early morning hours of June 13, 1991, Jewell broke into the home of his estranged wife, struck her lover in the head with a board, and cut his penis off with a knife.

After trial, Jewell filed a motion to correct error with attached affidavits alleging several ex parte contacts between the judge and jury during deliberations. Counsel for Jewell also filed a verified motion requesting an evidentiary hearing in order to present additional evidence supporting his claim that the trial judge and bailiff engaged in improper ex parte contacts with the jury. The State did not file any counter-affidavits controverting the affidavits submitted on Jewell's behalf. The State opposed the motion for an evidentiary hearing. The trial court summarily denied both the motion for an evidentiary hearing and the motion to correct error.

The affidavit of Robert Evans, the foreman of the jury reads in pertinent part as follows:

> During the course of our deliberations I, as foreman of the jury, initiated a number of communications with Judge Kern through the Court Bailiff who sat outside the jury room. At one point, fairly early in our deliberations, I asked the Bailiff, on behalf of the jury, whether we could have certain exhibits and instructions sent to the jury room. I assume that this information was communicated by the Bailiff to the trial judge because we were then provided with the requested exhibits and instructions. Also, at some time approximately between 5:00 p.m. and 7:00 p.m., I was told by the Bailiff that Judge Kern would be willing to arrange overnight lodging for the jury if we so desired. I asked the Bailiff to ask the Judge how much overnight lodging for the jury would cost and she returned

to advise me that the Judge said the cost would be in the neighborhood of $750. I communicated this information to the jury and we decided that we would continue our deliberations into the night rather than to spend that amount of the taxpayer's money. Also, during our deliberations, I advised Judge Kern, through the Bailiff, on three or four occasions that we were having difficulty reaching a verdict primarily because one of the jurors was holding out for acquittal. There were also other occasions upon which I spoke with the Bailiff, but these were merely requests for refreshments. At approximately 1:30 a.m. on February 1, 1992, the last person holding out for acquittal of the Defendant voted with the other eleven (11) jurors to make unanimous the verdicts of guilty we subsequently rendered to the Court.

In the Bedford Times Mail edition of February 3, 1992, I am quoted as saying:

"Some people were more tired than others. The Judge said we could stay at a hotel and he told me what it was going to cost. I said I couldn't see wasting taxpayer's money and to let us continue as long as we can. Finally, we reached a decision."

To the best of my knowledge that is an accurate quotation.

The affidavit of Jennifer Thelen, reporter for the Bloomington Herald Times, reads in pertinent part as follows:

As a reporter assigned to cover the trial of Barry L. Jewell, I interviewed Lawrence Superior Court Judge, Raymond Kern after the jury had returned its verdicts of guilty in the above entitled cause. I wrote a story for the Bloomington–Bedford Herald Times which was published on February 2, 1992. The following passage from that story appears on page C2:

Judge Ray Kern said that as the day wore on Friday, it wasn't clear whether the jury would be able to reach a verdict in the case.

"They kept saying they weren't sure they could make a decision." Kern said. "I kept encouraging them to try."

To the best of my knowledge the foregoing indirect and direct quotations attributed to Judge Raymond Kern are true and correct.

The affidavit of Terry L. English, Jewell's trial counsel reads in pertinent part as follows:

I remained in and around the Lawrence Superior Courtroom and the Judge's chambers throughout the jury's deliberations. The jury finally reported verdicts of guilty at approximately 1:30 a.m. on February 1, 1992. I do not recall specifically hearing of the jury's request for exhibits and instructions, but I did become aware that such a request had been made and that material had been made available to the jury. I am not at this point aware of what material was sent to the jury room. I did not consult with my client, Mr. Jewell with respect to this matter. As the deliberations wore on, I do remember being told by Judge Kern that the jury had reported to him that they thought they were "hung." Also, during the night, I did receive information either through the Judge or the Bailiff that the number of jurors in disagreement was being "whittled down."

\* \* \* \* \* \*

I do recall that the Superior Court personnel made contingent arrangements to lodge the jury overnight. I was not aware, however, that the potential cost of those lodging arrangements had been communicated to the jury by the trial judge through his bailiff.

Additional facts are supplied as necessary.

## DECISION

■ A criminal defendant has the right to be present at all stages of a criminal proceeding which require the presence of the jury. U.S.CONST. amend. VI; IND. CONST. art. 1 § 13; *Cape v. State* (1980), 272 Ind. 609, 400 N.E.2d 161; *Harrison v. State* (1991), Ind.App., 575 N.E.2d 642. In

*Marsillett v. State* (1986), Ind., 495 N.E.2d 699, our supreme court noted:

> When jurors request additional guidance from the court, the proper procedure is for the judge to notify the parties so they may be present in court before the judge communicates with the jury. The judge should inform the parties of his proposed response to the jury.
>
> Communications between the judge and deliberating jury in defendant's absence are forbidden, but such communications do not constitute *per se* grounds for reversal. An inference of prejudice arises from an *ex parte* communication and this inference creates a rebuttable presumption that error has been committed. If this inference is rebutted, the error is deemed harmless. To determine whether the court's communication to the jury is improper, we evaluate the nature of the communication to the jury and the effect it might have had upon a fair determination.

*Id.* at 709 (Citations omitted). This procedure is well-established. *See Morgan v. State* (1989), Ind., 544 N.E.2d 143; *Wine v. State* (1989), Ind., 539 N.E.2d 932; *Cornett v. State* (1982), Ind., 436 N.E.2d 765; *Lewis v. State* (1981), Ind., 424 N.E.2d 107; *Harrison*, 575 N.E.2d 642; *Thompson v. State* (1990), Ind.App., 555 N.E.2d 1301, *trans. denied.* Additionally, Ind.Code 34–1–21–6 provides that:

> After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

This statute has been held to be applicable in criminal proceedings, *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188; and a communication between the judge and the jury regarding instructions that takes place without notice to the defendant violates not only the defendant's constitutional rights but also I.C. 34–1–21–6. *Harrison*, 575 N.E.2d 642, 648, 649.

■ The proper procedure to respond to a jury which is having difficulty in reaching a verdict after it has begun deliberations is for the court to call the jury back into open court in presence of all parties and their counsel and to reread all the instructions given to the jury prior to its deliberations, without emphasis on any of the instructions and without further comment. *Lewis*, 424 N.E.2d 107.

■ The mechanism available for a defendant to bring facts outside of the record to the attention of the trial court and the Court of Appeals is a properly verified affidavit submitted pursuant to Ind.Trial Rule 59 and Crim.R. 17. *Harris v. State* (1981), Ind., 427 N.E.2d 658. A juror may submit an affidavit to show that the jury was exposed to improper, extrinsic materials or influences during deliberations. *Harrison*, 575 N.E.2d 642. An affidavit submitted under T.R. 59 and Crim.R. 17 becomes a part of the record. *Harris*, 427 N.E.2d 658. If such an affidavit is uncontradicted, the appellate court must accept its contents as true. *Id.; Majko v. State* (1987), Ind., 503 N.E.2d 898.

■ Jewell properly submitted the affidavits referred to in the FACTS section above pursuant to T.R. 59 and Crim.R. 17. Although Jewell provided the State with the notice required by Crim.R. 17, the State did not offer counter-affidavits. Thus, we must accept the contents of the affidavits as true. We will not, however, consider any hearsay contained in the affidavits. *See Lemont v. State* (1976), 168 Ind.App. 486, 344 N.E.2d 88, *trans. denied.*

■ Through the affidavit of the jury foreman, Jewell established the existence of "a number of communications" between judge and jury during deliberations through the bailiff. As the affidavits set out above reveal, the communications involved 1) a request to be provided with certain exhibits and instructions, 2) the cost of overnight lodging, 3) the difficulty the jury was having in reaching a verdict (three or four communications). Thus, Jewell has established a violation of his constitutional right to be present at all

stages of his prosecution (as well as a violation of I.C. 34-1-21-6) creating a rebuttable presumption of prejudice and reversible error. As noted above, the State failed to present any affidavits controverting Jewell's evidence in order to rebut this presumption. Accordingly, our analysis is focused, in effect, on whether the improper ex parte contacts constituted harmless error. *Morgan,* 544 N.E.2d 143, 149; *Cornett,* 436 N.E.2d 765, 766.

 The constitutional right involved in the present case, the criminal defendant's right to be present at all stages of a criminal proceeding guaranteed by U.S. CONST. amend. VI and IND. CONST. art. 1 § 13 is related to the criminal defendant's constitutional right to the effective assistance of counsel at all critical stages of the criminal prosecution which is guaranteed by the same constitutional provisions. *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634; *Boesel v. State* (1992), Ind.App., 596 N.E.2d 261. Moreover, when confronted with a deficient, unprofessional performance by defendant's counsel, we must determine whether the deficient performance prejudiced the defense, that is, whether counsel's errors were so serious as to render the results of the defendant's trial unreliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. This is similar to the analysis which we must undertake today, that is, whether the trial judge's improper ex parte communications were harmless. In the context of determining whether the ineffective assistance of counsel results in reversible error, our supreme court has held that trial counsel's errors that may not individually be sufficient to establish ineffective assistance can amount to ineffective assistance when accumulated. *Williams v. State* (1987), Ind., 508 N.E.2d 1264. We believe the same principle operates under the present analysis and that improper ex parte communications which may not individually be sufficient to establish reversible error, may result in reversible error when accumulated.

 In the present case, Jewell has established at least five improper ex parte communications between judge and jury. Below, we discuss the procedure employed by the trial court in providing the jury with certain written instructions during deliberations and have found reversible error. However, we note at the outset, that even if the ex parte communications involved in this case were not individually sufficient to establish reversible error, we would hold that reversible error has resulted from their accumulation.

 In Indiana, the accepted practice is not to allow the jurors to take the written instructions with them into the jury room. *Cornett,* 436 N.E.2d 765. However, the trial court has discretion to send the entire body of written instructions to the jury "cleansed" of extraneous information. *Mitchell v. State* (1989), Ind., 535 N.E.2d 498, 501. In order to protect the defendant's constitutional right to be present at all critical stages of his criminal prosecution, the written jury instructions should not be sent to the jury room after deliberations have begun without employing the well-established "open court" procedure. *Cornett,* 436 N.E.2d 765, 766.

The State urges that Jewell cannot complain about the procedure employed by the trial court in providing the jury with certain instructions because a "Jury Trial Entry" made by the trial court indicates that Jewell agreed to the procedure. The "Jury Trial Entry" reads in pertinent part as follows:

> During said deliberations and upon request by the jury, Final Instructions, in writing, are delivered to the jury by agreement of the parties.

However, Jewell's trial attorney's affidavit, set out in the FACTS section above, stated that neither Jewell nor he had been contacted before the instructions were provided to the jury, effectively denying that he had been a party to an agreement regarding the matter.

In *Majko,* 503 N.E.2d 898, our supreme court held:

> If the affidavit [submitted pursuant to T.R. 59 and C.R. 17] is uncontradicted, the reviewing court must accept its con-

tents as true. As we stated in [*Scharbrough v. State* (1968), 249 Ind. 316, 232 N.E.2d 592], 'This court is at a loss to understand why no counter-affidavit was filed as to what is set out in the supporting affidavit to the motion for a new trial, if it was not the truth. We are bound under our rules to accept the affidavit as the truth, since it is uncontradicted.' *Id.* 232 N.E.2d at 596. There were no counter-affidavits filed disputing the contents of [the affidavit in *Majko* ] and therefore we must treat the allegations contained therein as true.

503 N.E.2d at 900 (Citations omitted). We, like our supreme court in *Majko*, are at a loss to understand why no counter-affidavit was filed unless the contents of Jewell's trial counsel's affidavit were true. Had the prosecutor been a party to an agreement between the parties regarding the provision of written instructions to the jury during deliberations, he would have been in a uniquely favorable position to provide the required counter-affidavit. Jewell's attorney's affidavit is uncontradicted and has become a part of the record by operation of Crim.R. 17. We hold that the case law cited above and principles of due process require that we accept Jewell's attorney's affidavit as true regarding the nonexistence of any agreement between the parties pertaining to the provision of certain written instructions to the jury despite the "Jury Trial Entry."

 In the present case, the jury foreman's affidavit states that after jury deliberations began he requested "whether we could have certain ... instructions sent to the jury room.... we were then provided with the requested ... instructions." Based on the jury foreman's uncontradicted affidavit, it would appear that not all of the final instructions were sent to the jury room but that only "certain" "requested" instructions had been provided. The provision to the jury of less than the entire body of written instructions constitutes reversible error. *Harrison*, 575 N.E.2d 642, 649.

 Even if we were to resolve any uncertainty in favor of the State and assume that the "certain" "requested" instructions included the entire body of instructions, we would find reversible error. In *Cornett*, 436 N.E.2d 765, our supreme court held that the trial court erred by sending the written instructions to the jury after deliberations had commenced and at the request of the jury foreman without having adhered to the well-established "open court" procedure described and outlined above. *Id.* at 766. The trial court compounded its error by giving the jury written instructions without first purging them of information that might have caused the jurors to speculate upon the relative importance of any particular instruction e.g., instructions labeled 'Defendant's Instruction no. ——.' *Id.* The irrelevant information was held to have amounted to a prejudicial qualification of or an addition to the instructions. *Id.*

As noted above, the trial judge violated Jewell's constitutional right to be present at all critical stages of his prosecution by providing the jury with instructions after deliberations had begun without adhering to the well-established "open court" procedure. Moreover, the written instructions contained in the instant record have not been purged of information that the *Cornett* court held compounded the error. For example, five instructions identified the State as their source. One instruction cited three cases below its text and another cited one case.[2]

*Cornett* controls here. The trial court erred by providing the jury with the written instructions after deliberations had begun without employing the "open court" procedure prescribed by our supreme

---

**2.** Incidentally, the form of the written instructions provided the jury in the present case was violative of I.C. 35–37–2–2(6) which provides that:

> ... If final instructions are submitted to the jury in written form after having been read by the court, no indication of the party or parties

tendering any of the instructions may appear on any instruction.

The provision of a 'clean' copy of the instructions expunged of all extraneous matter may avoid the problems encountered in *Cornett*, 436 N.E.2d 765. *Armstead v. State* (1989), Ind., 538 N.E.2d 943, 947.

court. *Id.* at 766. The trial court's error was compounded because five of the instructions identified the State as their source and two instructions contained citations to cases. The additions to the text of the instructions amounted to a qualification or an addition to the instructions placing a gloss on the instructions they did not contain when initially read to the jury and thereby created the same potential for prejudice which required reversal in *Cornett.*

Jewell established numerous ex parte communications between judge and jury which violated his constitutional right to be present at all critical stages of his prosecution, creating a rebuttable presumption of reversible error. The State has not rebutted this presumption nor have we found the communications to constitute merely harmless error. Therefore, we must reverse and remand for a new trial.

Judgment reversed.

SHARPNACK, C.J., and BARTEAU, J., concur.