Susana **HENRI**, Appellant–Plaintiff,

v.

Stephen **CURTO**, Appellee–Defendant.

No. 49A02–0709–CV–777.

Court of Appeals of Indiana.

July 31, 2008.

Gregory Bowes, Indianapolis, IN, Attorney for Appellant.

Ralph W. Staples, Jr., M. Brady Beyers, Bryan H. Babb, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Susana Henri (Henri), appeals the trial court's judgment in favor of Appellee–Defendant, Stephen Curto (Curto), finding that Curto did not rape her and awarding him $45,000 on his counterclaim.[1]

We reverse and remand for further proceedings.

### ISSUES

Henri raises two issues for our review, one of which we find dispositive and which we restate as: Whether the trial court abused its discretion when it denied Henri's motion to correct error.[2]

### FACTS AND PROCEDURAL HISTORY

On Saturday, March 20, 2004, Henri was at a house party near Butler University in Indianapolis, Indiana, where she was a student. That evening, she met Curto for the first time. They hung out with other students, drank until they were both intoxicated and eventually went back to Henri's dormitory room and engaged in a sexual encounter. Henri reported what had happened to Butler University, and the University held a hearing. The judicial official concluded that Curto had violated University rules and suspended Curto for four years.

---

1. Oral argument was held in the Indiana Supreme Court Courtroom on May 22, 2008. We thank counsel for their excellent presentations, which aided us in our deliberations.

2. Because we remand for the opportunity for a new trial, we need not consider whether Curto submitted sufficient evidence to support his counterclaim. The parties will be able to address the appropriate elements on Curto's counterclaim at that time.

Henri and her parents sought criminal prosecution of Curto, but no charges were filed. On December 20, 2004, Henri filed a civil suit alleging that Curto had raped her. On February 8, 2005, Curto filed a counterclaim alleging that Henri tortiously interfered with Curto's contract with Butler University as a student enrolled in a degree program. A jury trial was held, and at the close of evidence on June 21, 2007, jurors began to deliberate. That same day, the jury returned a unanimous verdict finding that Curto had not raped Henri, and that Henri tortiously interfered with Curto's contract with Butler University. Henri's counsel polled the jury and each member stated affirmatively that they had voted for the verdict as returned. The trial court entered its judgment on the verdict awarding Curto $45,000 on his counterclaim.

On July 23, 2007, Henri filed a Motion to Correct Error and a Motion to Supplement the Record. She submitted affidavits attached to the Motion to Correct Error stating that after the trial, one juror, Ms. Barbara Kirk (Kirk), contacted her counsel. Kirk's affidavit stated that during breaks in the trial other jurors discussed the case. After the close of evidence, during deliberations, a juror had summoned the bailiff and asked if the verdict had to be unanimous. The bailiff left and returned explaining that, "the jury would have to keep deliberating until we could reach a unanimous verdict." (Appellant's App. p. 47). Kirk stated she was the only juror leaning towards ruling in favor of Henri. Kirk asked if she could be removed from the jury, because she thought the jury was hopelessly deadlocked. The bailiff shook her head to say no and did not relay the message to the judge. Kirk also stated that jurors were permitted to keep their cell phones during deliberations, and one participated in a phone call during deliberations. The juror who talked on the phone said during the conversation that, "she would get to class as soon as she could." (Appellant's App. p. 48). Further, Kirk stated that other jurors, and primarily the alternate juror, did things to distract her and interrupt her when she would try to talk during deliberations.

On August 14, 2007, without any response from Curto, the trial court entered an order denying Henri's Motion to Correct Error and Motion to Supplement the Record.

Henri now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION [3]

 Henri argues that the trial court abused its discretion when it denied her

---

**3.** As a preliminary matter, we address Curto's motion to strike the introduction from Henri's Appellant's Brief. Indiana Appellate Rule 42 grants discretion to this court to strike from documents matter that is "redundant, immaterial, impertinent, scandalous" or otherwise inappropriate. The introduction section of Henri's Appellant's Brief contends that Henri was raped once by Curto and then raped again by the judicial system. The Introduction does not aid our consideration of the issues and is inappropriate. *See Ind. Dep't. of Envtl. Mgmt. v. Medical Disposal Services, Inc.*, 729 N.E.2d 577, 581 n. 10 (Ind.2000) (striking MDSI's Brief in Opposition to Trans-

fer for inappropriate tone and lack of respect for the opposing party). For this reason, we grant Curto's motion to strike the introduction section of Henri's Appellant's Brief.

Curto also moves for us to award him attorney fees for having to defend his judgment on appeal; however, we conclude that he has stated no sufficient ground that would require such an award.

Since we are remanding this case, we deem it prudent that both parties consider language from an opinion brought to our attention through a citation in Henri's Reply Brief: "In actions arising out of torts, and in criminal cases, lawsuits are not peace conferences, but

motion to correct error. Specifically, Henri contends that three errors occurred during the jury's deliberation that require a new trial: (1) a juror asked if the verdict had to be unanimous, the trial court responded without advising the parties or their counsels of the question, and the bailiff conveyed to the jury a statement which misstated the law; (2) one juror received two incoming phone calls, one of which she answered to say "she would get to class as soon as she could;" and (3) the alternate juror stayed in the deliberations room and interrupted other jurors with her actions while they were discussing the evidence.

█ We review the denial of a request for a new trial pursuant to a Trial Rule 59 motion to correct error for abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind.2008). An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts and circumstances before the trial court or if the trial court misapplied the law. *Supervised Estate of Williamson v. Williamson*, 798 N.E.2d 238, 241 (Ind.Ct.App.2003).

In essence, Henri has alleged one ex parte communication from the trial court to the jury and two instances of outside influences improperly brought to bear on the jury. Our supreme court addressed a circumstance of ex parte communications by a trial court with a deliberating jury in *Rogers v. R.J. Reynolds Tobacco Co.*, 745 N.E.2d 793, 795 (Ind.2001), by stating,

> battles. They are not physical contests like the wager of battle in ancient times, but encounters in which feelings are often wounded and reputations are sometimes soiled." *Bussewitz v. Wisconsin Teachers' Ass'n*, 188 Wis. 121, 205 N.W. 808, 811 (1925). It is apparent from reviewing the record that at least some damage has been done to both Henri and Curto's reputations in the litigation of

In regard to judicial communications to a deliberating jury, we have repeatedly noted that when the jury makes a request of the court the proper procedure is for the judge to notify the parties so they may be present in court and informed of the court's proposed response to the jury before the judge ever communicates with the jury. When this procedure is not followed, it is an ex parte communication.... However, although an ex parte communication creates a presumption of error, such presumption is rebuttable and does not constitute per se grounds for reversal. In deciding whether the presumption of harm has been rebutted, we evaluate the nature of the communication to the jury and the effect it might have had upon a fair determination.

However, consideration of allegations of outside influences improperly brought to bear on a jury is considered under a different legal standard. In *Griffin v. State*, 754 N.E.2d 899, 901 (Ind.2001), *reh'g granted, clarified on other grounds*, our supreme court applied the following standard to Griffin's claim of improper outside influences:

> A defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant. We review the trial judge's determination on these points only for abuse of discretion, with the burden on the appellants to show that the misconduct meets the prerequisites for a new trial.

this dispute. We take pause here, only to remind the parties and their counsels of the likelihood of further damage to one or both parties' reputations if another trial is pursued. However, due to the serious nature of the allegations, only the parties can deem whether risk of such damage is worth pursuing another unpredictable verdict from a panel of jurors.

Henri correctly contends that we may consider these alleged errors collectively to determine whether they require reversal of the trial court. *See Jewell v. State,* 624 N.E.2d 38, 43 (Ind.Ct.App.1993). Because we conclude that the improper outside influences imposed on the jury would compound the effect of the ex parte communication with the jury, we choose to consider the alleged errors collectively.

### I. *Proper Subjects for a Juror's Affidavit*

In the trial court's Order on Henri's motion to correct error, the trial court discusses Kirk's affidavit, but explains that the affidavit violates Indiana Evidence Rule 606(b). (Appellant's App. p. 8). Since Henri's motion to correct error relied exclusively upon Kirk's affidavit, we must determine whether that affidavit was admissible evidence of ex parte communications and outside influences. Indiana Evidence Rule 606(b) provides:

*Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

Our supreme court has further clarified what a juror may testify to when impeaching the validity of a verdict, by stating:

This [c]ourt has long supported the rule prohibiting jurors from later impeaching their verdicts. The policies underlying this rule are important. Allowing such juror affidavits could defeat the jury's solemn acts under oath, open the door to post-trial jury tampering, and allow dissatisfied jurors to destroy a verdict after assenting. [ ]

Moreover, if impeachment were allowed, "[t]he sanctity of verdicts would [ ] be diminished and no verdict could ever be final. Jurymen would forever be harassed." *Turczi v. State,* 261 Ind. 273, 275, 301 N.E.2d 752, 753 (1973) (citations omitted). For these reasons we have historically been reluctant to open the door to a "contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries." *Stinson v. State,* 262 Ind. 189, 198, 313 N.E.2d 699, 704 (1974).

The problem, of course, is how to protect such vital defendants' rights as the right to confront witnesses (which may be violated if a jury considers information that was not in evidence) or the right to an impartial jury, if the best (and often only) witnesses to jury improprieties cannot be heard. *See Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). The U.S. Supreme Court considered that dilemma over a century ago and held that a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Mattox v. United States,* 146 U.S. 140,

149, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (quoting *Woodward v. Leavitt,* 107 Mass. 453 (1871)). This Court adopted the *Mattox* approach in *Fox v. State,* 457 N.E.2d 1088, 1093 (Ind.1984).

Ten years after *Fox,* we adopted Rule 606(b) as Indiana law on juror impeachment of verdicts. This is our first occasion to decide whether the common law prohibition against a juror testifying about how an outside influence affected his decision still applies when a defendant invokes one of the Rule 606(b) exceptions.

Federal practice may inform our analysis. Federal Rule of Evidence 606(b) is very similar to Indiana's rule. Federal courts generally continue to follow the rule of *Mattox,* and will accept juror affidavits stating that deliberations were tainted by improper information or influence, but disregard any statements on the effect of that information or influence on the juror's decision. *See* 2 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* 905 (7th ed.1998). As the Seventh Circuit has explained:

> In evaluating a claim that the jury was improperly influenced by extraneous material, "a district court must ignore a juror's comment regarding how a particular piece of material disposed the juror toward a particular verdict, and the district court must make an independent determination of the likely effect of the prejudicial material."

*United States v. Paneras,* 222 F.3d 406, 412 n. 1 (7th Cir.2000) (quoting *United States v. Berry,* 92 F.3d 597, 601 (7th Cir.1996)).

This approach would seem to restrain the potential for a losing party to provoke virtual re-enactments of the deliberation through competing affidavits purporting to describe the thought processes of individual jurors. As Judge Allen Sharp observed, one risk in allowing juror impeachment of verdicts is that "[i]t is all too easy for ingenious counsel to prepare carefully worded affidavits to cast doubt on a jury verdict." *Lindsey v. State,* 282 N.E.2d 854, 861 (Ind.App.1972).

Thus, the fact that one juror says the alternate's input "affected" her decision is not part of the analysis governing the request for a new trial. Rather, the trial court must consider the alternate's conduct in the overall trial context. *Griffin,* 754 N.E.2d at 902 (footnotes omitted and citations omitted).

 It is clear that a juror affidavit such as Kirk's is properly submitted to prove ex parte communications with the jury and instances of juror misconduct. That being said, in light of our supreme court's analysis in *Griffin* and Indiana Evidence Rule 606(b), Kirk's affidavit makes certain contentions that we must disregard. First, Kirk describes the impact of the bailiff's statement upon her considerations by stating it "gave me the impression that hung juries were not allowed in civil cases." (Appellant's App. p. 48). Although parties are free to argue what the impact of the ex parte communications could be on the minds of the jurors, we cannot consider a juror's statement "on the effect of that information or influence on the juror's decision." *Griffin,* 754 N.E.2d at 902.

 Additionally, Kirk's affidavit makes reference to comments by a fellow juror that she was leaving for vacation soon and needed to finish quickly. Jurors "may not testify as to any matter or statement occurring during the course of the jury's deliberations." Ind. Evid. R. 606(b). Outside influences and ex parte communications are exclusions to this rule. *See id;* *see also Rogers,* 745 N.E.2d at 795. But,

Henri has not shown any exclusion that would permit Kirk to testify as to the comments from her fellow juror. Therefore, we must disregard Kirk's testimony on the effect of the bailiff's statement upon her and her account of what the other juror was saying regarding her impending vacation.

## II. The Trial Court's Ex Parte Communication with the Deliberating Jury

■■■■ The trial court explained in its written entry denying the motion to correct error that it received a juror's question asking whether the verdict had to be unanimous twenty minutes into deliberations. (Appellant's App. p. 7). The trial court told the bailiff to instruct the jury to "continue their deliberations." *Id.* Kirk explained in her affidavit that the bailiff returned and said, "the jury would have to keep deliberating until we could reach a unanimous verdict." (Appellant's App. p. 47).

In ruling on Henri's motion to correct error, the trial court did not acknowledge the statement from the bailiff to the jury as recounted in Kirk's affidavit. Rather the trial court relied upon what it had instructed the bailiff to tell the jury. Since our task is to evaluate the effect of an ex parte communication upon the jury we conclude that what the bailiff conveyed to the jury is the material statement, not what the trial court stated to the bailiff. *See Rogers*, 745 N.E.2d at 795. Trial Rule 59(H) requires that "when a motion to correct error is based upon evidence outside the record, the motion shall be sup-

ported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion." An affidavit submitted under T.R. 59 becomes a part of the record. *Allen v. State*, 743 N.E.2d 1222, 1235 (Ind.Ct.App.2001). "If such an affidavit is uncontradicted, the appellate court must accept its contents as true." *Id.* (citing *Jewell v. State*, 624 N.E.2d 38, 42 (Ind.Ct.App.1993)).[4] Because there is no evidence to the contrary, the characterization in Kirk's affidavit of what was said to the jury must be accepted as true. Kirk's account of the bailiff's statement to the jury—"the jury would have to keep deliberating until we could reach a unanimous verdict"—which we accept as true, was an *ex parte* communication which creates a presumption of error. *See Rogers*, 745 N.E.2d at 795.

Next, we must analyze the nature of the communication and the effect it might have had on a fair determination of the case to determine if the presumption of harm may be rebutted. *Rogers*, 745 N.E.2d at 795. We interpret the statement by the bailiff to be that the jurors were required to deliberate until they came to a unanimous verdict, which is an incorrect statement of the law because jurors have the opportunity to cause a mistrial or hung jury pursuant to Indiana Code section 34–36–1–7.[5] Because the statement by the bailiff to the jury was a misstatement of Indiana law, it would be unlikely that the presumed prejudice from that statement could be rebutted. In *Rogers*, our supreme court relied in part upon the fact that a judge's ex parte response to a jury's question was

---

**4.** Because Kirk's affidavit must be accepted as true, there is no need to award Henri the alternative relief she has requested: a remand to create a better record of the improprieties during deliberations.

**5.** Indiana Code section 34–36–1–7 provides, in pertinent part: "The jury may be discharged by the court under any of the following circumstances: ... (4) The jury has been kept together until it satisfactorily appears that there is no probability of the members agreeing upon a verdict."

"accurate, and not misleading" to find that any presumption of error was rebutted. *Rogers,* 745 N.E.2d at 795. In *Nesvig v. Town of Porter,* 668 N.E.2d 1276 (Ind.Ct. App.1996), we analyzed an instance where a bailiff responded to a question from the jury. We concluded that the presumption of harm created by the bailiff's response to a juror's question had been rebutted in part because the bailiff had "correctly stated the law as set forth by the jury instructions." *Id.* at 1288.

Further, the effect of the statement could have had a significant impact upon the verdict. A plausible effect of the judge's instruction would be that jurors in the minority who are adamant that the majority is wrong may hold out to prevent a verdict. However, the statement by the bailiff conveys that jurors in the minority would face the daunting task of swaying all the other jurors if they are to stick to their convictions, a task surmountable in less than two hours on the silver screen if you are Henry Fonda, but a task that could be overwhelming in real life for the average juror.[6]

A similar scenario was reviewed by the Ninth Circuit Court of Appeals in *Weaver v. Thompson,* 197 F.3d 359 (9th Cir.1999). In *Weaver,* a bailiff had erroneously instructed a jury that it was required to reach a verdict on all counts charged against the defendant. *Id.* at 365.

> The jurors, not yet having reached a verdict on all counts, sent out a note to the judge inquiring whether they must decide all counts. The note, moreover, was sent out at 8:30 p.m., after a full day of trial followed by four hours of deliberations. After departing to deliver the note to the judge, the bailiff returned and informed them that they were required to return a verdict as to all four

counts. Five minutes later, the jury reached guilty verdicts on all counts. It requires no imagination to comprehend that these events may have altered the minority jurors' views of the deliberations. Had their inquiry been properly answered, they would have understood their task to be one of conscientiously coming to and abiding by their own decision, even if this resulted in a hung jury as to some counts. Based on the erroneous instruction received from the bailiff, their task was, as to each count, to yield to the majority or keep at it until they persuaded the majority to join their position that acquittal was warranted.

*Id.* at 365–66 (footnotes omitted). The *Weaver* court granted Weaver habeas relief from his convictions for rape and sexual abuse because of the bailiff's erroneous statements to the jury. *Id.* at 367.

### III. *Outside Influences*

First, we address the cell phone call in which another juror stated "she would get to class as soon as she could." (Appellant's App. p. 48). We previously considered allegations of jury impropriety derived from phone calls by jurors during deliberations in *Pagan v. State,* 809 N.E.2d 915, 920–21 (Ind.Ct.App.2004), *trans. denied.* The *Pagan* court expressed concerns about jurors' use of cell phones by stating:

> In this day and age, thanks to cell phones, most people now take it for granted that they can call or be called by anyone, anywhere, at any time. This expectation should not be carried into the jury room once deliberations have commenced, in accordance with the long-standing principle in Indiana of disfavoring the separation of jurors or having outside communications during deliberations. *We agree with Pagan that there*

---

**6.** *See* 12 ANGRY MEN (Orion–Nova Productions 1957).

*is the potential for improper outside influence on a juror if that juror telephones a family member or business associate and informs them that the jury is still deliberating, and the family member or business associate then places implied or express pressure on the juror to hastily reach a verdict and return home or to work.*

*Id.* at 922 (footnote omitted) (emphasis added). Kirk's allegation of what she overheard from the phone conversation supports an inference that the person who called her fellow juror was an improper outside influence that placed pressure on that juror to hastily reach a verdict and come to class. However, we are informed from Kirk's affidavit that Kirk was the only juror leaning toward voting for Henri. Thus, if we were analyzing the probable effect of this improper outside influence upon the verdict independently, we would find the effect to be slight. That being said, we must also acknowledge that Kirk overheard the phone call and would have recognized the pressure placed upon her fellow juror. This recognition would impact a juror's internal calculus of whether her fellow jurors with conflicting opinions would have the patience to engage in thorough consideration of facts and inferences to be persuaded to reevaluate their position and come to a different decision. As such, the phone call could have become an obstacle to a fair determination of the case.

Kirk also alleged undue outside influence from the alternate juror. In *Griffin*, 754 N.E.2d at 903, our supreme court explained that an alternate juror is not a member of the jury, "and he or she qualifies as an outside influence under Rule 606(b)." The *Griffin* court considered facts where the deliberating jurors asked the alternate what her opinion of Griffin's guilt was. *Id.* at 900. The alternate responded that she thought Griffin was guilty because the victim's identification of

him was accurate. *Id.* Our supreme court acknowledged the rebuttable presumption of prejudice created by the communication with the alternate. *Id.* Ultimately, our supreme court rejected Griffin's request for a new trial due to improper outside influence by stating:

Here, however, the alternate's only influence was adding one more "me, too" to the collective voice of the jury majority. Under the facts presented, Griffin has not shown either gross misconduct or probable harm. The trial judge therefore acted within the bounds of his discretion in denying relief based on juror misconduct.

*Id.* at 903.

Here, Kirk alleged in her affidavit that the alternate juror, Ms. Popov, was disruptive of the deliberation process:

In the final instructions to the jury, Judge Johnson told the alternate juror, Ms. Popov, that she "must not participate in any manner in the discussions, deliberations or voting of the jury," and that she should only participate if the Court instructs her to do so. During the deliberations, Ms. Popov did communicate with the other jurors. While I was discussing the evidence with the other jurors, Ms. Popov would take actions that would interrupt me. On one occasion, she tapped her hand on the conference table. On another occasion, I saw her put both hands over her mouth in a gesture that suggested she wanted to speak, but had caught herself. Each time Ms. Popov made a gesture or response, other jurors would giggle or snicker. Ms. Popov continuously used these gestures and nonverbal noises to interrupt during times when statements were made that were supportive of the plaintiff's case.

(Appellant's App. p. 47). From the vantage point of reviewing a paper record based upon one juror's description of what has occurred, it is difficult to decipher exactly what the effect of Ms. Popov's hijinks were. At a minimum, they were a nuisance that interrupted the deliberative process, and at worst, they may have amounted to active participation in the deliberative process. Outside of the context of the bailiff's statement, it is unlikely that we would conclude Henri would have displayed probable harm by explaining Ms. Popov's actions considering our supreme court's holding in *Griffin.* However, together with the ex parte communication, we find that Ms. Popov's actions represent one more obstacle to a fair determination of the case.

In sum, the trial court engaged in ex parte communications with the jury when it fielded the question from the jury without notifying the parties that the question had been submitted. *See Rogers,* 745 N.E.2d at 795. Typically, we refuse to speculate as to how or why jurors come to their verdict. *See, e.g., Newbill v. State,* 884 N.E.2d 383, 392 (Ind.Ct.App.2008). But, as here, where a party has submitted a sworn affidavit identifying ex parte communications and improper outside influences improperly brought to bear upon deliberating jurors, we must speculate to determine the effect of the influences on the fair determination of the evidence. The statement that was conveyed to the jury in response to its question misstated the law and likely affected the fair determination of the evidence by misinforming the jurors about their ability to abide by their conscientiously held opinions and their ability to prevent a verdict that they disagree with. Further, the outside influences likely compounded the error created by the ex parte communication. Therefore, we conclude that the presumption of error from the ex parte communication has not been rebutted, and the trial court abused its discretion by denying Henri's motion to correct error.

## CONCLUSION

Based on the foregoing, we conclude that the trial court engaged in an ex parte communication with the jury, and the presumption of error from that communication has not been rebutted. Therefore, the trial court abused its discretion when it denied Henri's motion to correct error.

Reversed and remanded for further proceedings.

ROBB, J., concurs with separate opinion.

BAKER, C.J., dissents with separate opinion.

ROBB, Judge, concurring.

I concur fully in the majority opinion, but write separately to address certain points made by the dissent.

First, with regard to Kirk's affidavit, I note that for the allegations therein that fall within the parameters of Evidence Rule 606(b), we accept the allegations as true because the law requires us to do so. Curto did not file a response to Henri's motion and did not controvert the claims made by Kirk in her affidavit; therefore, we must accept the contents of the affidavit as true. *See* op. at 141 (citing *Jewell v. State,* 624 N.E.2d 38, 42 (Ind.Ct.App. 1993)); *cf. Evans v. Buffington Harbor River Boats, LLC,* 799 N.E.2d 1103, 1109 n. 6 (Ind.Ct.App.2003) ("The import of the *Jewel* decision is that we must accept the alternate juror's claims as true. Nonetheless, that does not remove the claim from the reach of Evidence Rule 606(b) ...."), *trans. denied.* The law does not support weighing the allegations in a juror's affidavit against the juror's conduct at trial in

order to determine which assertions are truthful as the dissent suggests.

The dissent cites a recent criminal case addressing alleged juror misconduct during a criminal case and notes that the defendant therein faced a sixty-five year sentence. *See* op. at 145 (citing *Myers v. State*, 887 N.E.2d 170 (Ind.Ct.App.2008)). I do not believe we can judge cases against each other in this manner. Although the stakes in *Myers* were the defendant's personal liberty for sixty-five years, the stakes here are personal reputation for a lifetime. The stakes are high to every litigant and each case should be considered on its own merits, within the bounds of the law.

The dissent also calls reversing the jury verdict and remanding for a new trial a "radical act." Op. at 145. I acknowledge that parties are not entitled to a perfect trial; they are entitled only to a fair trial. *See* Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Nonetheless, when a party can demonstrate that she has not received a fair trial, reversal is not "radical"—it is the appropriate course of action.

BAKER, Chief Judge, dissenting.

I dissent from the result reached by the majority. Initially, I must part from my colleagues' conclusion that we are compelled to accept the version of events contained in Kirk's affidavit as true. *See* op. p. 141. In fact, I believe that Kirk, herself, offered the trial court two differing versions of events: (1) jury deliberations that were tainted by the allegedly improper events, as described in the affidavit; and (2) jury deliberations that were fair, proper, and normal, as implicit in Kirk's acts of standing before the trial court during the polling of the jurors in open court,

raising no complaints, and affirmatively telling the trial court that she agreed with the rest of the jury. I believe that it was for the trial court to weigh this conflicting evidence and determine whether Kirk was telling the truth in open court or, instead, in her affidavit.

Furthermore, even if I were to accept the majority's conclusion that we must take the version of events in the affidavit as true, I do not believe that the events described by Kirk therein warrant a reversal. The events relied upon by the majority in reversing include: (1) the statement made by the bailiff to the jurors regarding a unanimous verdict; (2) the statement made by a juror during a cell phone call that she "would get to class as soon as she could," appellant's app. p. 48; and (3) the actions of the alternate juror, which included tapping the table and making other, nonverbal gestures.

A panel of this court very recently considered a criminal case—in which the defendant faced sixty-five years of imprisonment—involving the following jury conduct: (1) jurors who indicated that, before the trial began, they had already reached conclusions about the defendant's guilt and connection to the case; (2) jurors who impermissibly used cell phones and watched television; and (3) jurors who consumed alcoholic beverages at some points during the relevant period of time. *Myers v. State*, 887 N.E.2d 170 (Ind.Ct.App. May 30, 2008). In affirming the trial court, this court cautioned that "[t]he trial court was in a better position than we are to gauge the jurors' comportment at trial and their representations regarding their . . . behavior." *Id.* at 195.

I do not believe that the alleged events that occurred during deliberations herein rise to the level of those described in *Myers*. In my opinion, it could not be

clearer that the facts that an alternate juror tapped the table or a juror commented on the phone that she hoped to be able to leave soon do not meet the high bar such that a reversal is warranted. And while I acknowledge that if, in fact, the bailiff informed the jurors that they had to reach a unanimous verdict, the situation was not ideal, I simply do not find it sufficient to take the radical act of reversing a jury verdict and remanding for a new trial. For all of the reasons stated herein, I disagree with the majority's resolution of this issue and would proceed to address the other arguments made by Henri on appeal.